THEODORE D. ALLEN et al., Respondents, *v.* THE CITY OF ONEIDA, Appellant.

Contract — agreement between municipal corporation and contractor for construction of public water works — when contractor cannot repudiate terms of contract and recover for alleged extra work.

1. Plaintiffs entered into a written contract with the defendant, a municipal corporation, to furnish concrete masonry for water works at a stated price per cubic yard. The contract provided that, at the completion of the work, the city engineer should measure the quantity; that upon his report the superintendent of public works should make a final estimate which should be conclusive and that payment according to his certificate should release the city from any further claim on account of such work. Upon completion of the masonry an estimate was made in accordance with the contract, and the certificate for the amount due the plaintiffs was assigned by them to a bank and paid by the city. *Held*, that the plaintiffs cannot repudiate their agreement and recover for masonry claimed to be in excess of the quantity shown in the final estimate and certificate for which they accepted payment.

2. In another contract with defendant, which contains the same general provisions as that relating to the masonry, it was provided that "within the lines of the lands to be used by the city for the new reservoir site, the ground shall be cleared of brush, roots, stumps and dead or decayed vegetable matter of whatsoever nature." Upon the trial evidence was admitted on behalf of plaintiffs that at or prior to the time bids were made and received for this work, the city officials stated that above the water line in the reservoir site plaintiffs would be required, only, to cut off the trees and stumps close to the ground and that they would not be required

to dig out such trees and stumps except below the water line; that subsequently, and under the contract, they were obliged to dig out the trees and stumps above the water line and that thereby they were put to increased and unnecessary expense, which they seek to recover. *Held*, error; that the contract on its face being clear and unambiguous, parol evidence to contradict or vary its terms and to show an alleged agreement or statement of the board of public works, at the time that proposals were made for the doing of said work, was inadmissible.

*Allen* v. *City of Oneida*, 151 App. Div. 943, reversed.

(Argued February 11, 1914; decided March 24, 1914.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered July 9, 1912, affirming a judgment in favor of plaintiffs entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*D. C. Burke* for appellant. In view of the provisions of the contracts and the course and conduct of the parties in attempting to carry them out, it must be held that there was an accord and satisfaction of the matters in difference between them. (*Palmerton* v. *Huxford*, 4 Den. 166; *People ex rel. MacDonough* v. *Buffato State Asylum*, 96 N. Y. 640; *Nassoiy* v. *Tomlinson*, 148 N. Y. 326; *Lestienne* v. *Ernest*, 5 App. Div. 373; *Dunn* v. *Whalen*, 120 App. Div. 729.) All conversations had by the parties prior to the execution of the contract are deemed to be merged in the written contract and the written contract alone expresses the agreement of the parties. (*Thomas* v. *Scott*, 127 N. Y. 133; *Trustees of Southampton* v. *Jessup*, 173 N. Y. 84; *Uihlein* v. *Matthews*, 172 N. Y. 154; *Tripp* v. *Smith*, 50 App. Div. 499; 168 N. Y. 165; *Stowell* v. *Greenwich Ins. Co.*, 163 N. Y. 298; *Brantingham* v. *Huff*, 174 N. Y. 53; *Dady* v. *O'Rourke*, 172 N. Y. 448.) Where a written contract is complete on its face and clear and unambiguous in its terms, oral evi-

32

dence is not admissible to vary or contradict the writing. (*House* v. *Walch*, 144 N. Y. 418; *Losing* v. *Cushman*, 195 N. Y. 386; *Lese* v. *Lamprecht*, 196 N. Y. 32; *Hail* v. *Beston*, 26 App. Div. 105; *Sherman* v. *Pedrick*, 35 App. Div. 15; *Van Derhoff* v. *Hartman*, 63 App. Div. 419; *Doolittle* v. *Fitchett*, 35 Misc. Rep. 529; *Van Hagan* v. *Van Rensselaer*; 18 Johns. 420; *Dent* v. *N. A. S. S. Co.*, 49 N. Y. 391; *Campbell* v. *Jimenes*, 7 Misc. Rep. 77; *Kinney* v. *McBride & Co.*, 88 App. Div. 92; *Norton* v. *Woodruff*, 2 N. Y. 153.) The testimony of the plaintiff's witnesses, in which they were allowed to testify to instructions they received from the superintendent of public works, as to how they should do the work, as evidence of a proper interpretation of the contract, was clearly illegal. (*Russell* v. *H. R. R. Co.*, 17 N. Y. 134; *Nat. Ulster Co. Bank* v. *Madden*, 114 N. Y. 280; *People* v. *McLoughlin*, 150 N. Y. 365.)

*H. W. Coley* and *E. L. Hunt* for respondents. The ruling of the court, admitting the testimony of plaintiffs' witnesses regarding the conversations between the board of public works and the superintendent of public works and the city engineer and some of the bidders, which took place prior to the filing of the bids and which explained the uncertainty and ambiguity in the specifications and assured the bidders that the board of public works would not require the bidders to grub out the stumps above high-water mark, but would only require them to saw off the stumps and trees close to the ground, was not error. (*Petrie* v. *Trustees of Hamilton College*, 158 N. Y. 458; *Chapin* v. *Dobson*, 78 N. Y. 74; *Middleworth* v. *Ordway*, 191 N. Y. 404; *Murdock* v. *Gould*, 193 N. Y. 369; *Beattie* v. *N. Y. L. I. Const. Co.*, 196 N. Y. 346; *Thomas* v. *Scott*, 127 N. Y. 133; *Bird* v. *Beckwith*, 45 App. Div. 124; *Streppone* v. *Lemon*, 143 N. Y. 626; *G. I. W. S. Co.* v. *Trojan Laundry Co.*, 126 App. Div. 584; *Studwell* v. *Brush Co.*, 126 App. Div. 818.) The acceptance by the

plaintiffs of the city checks in payment of what is called the final estimates upon these contracts was not an accord and satisfaction. (*Harby* v. *Henes,* 45 Misc. Rep. 366; *McDonald* v. *Potter,* 57 Misc. Rep. 206; *Raugh* v. *Wolf,* 110 N. Y. Supp. 923; *Dineen* v. *Gen. Accident Co.,* 110 N. Y. Supp. 344; *Schermerhorn* v. *Gardinier,* 46 Misc. Rep. 280; *Stratton* v. *Hunt Sullivan Co.,* 100 N. Y. Supp. 846; *Shaver* v. *Armstrong,* 52 Misc. Rep. 626; *Smith* v. *Mayor, etc., of N. Y.,* 4 N. Y. Leg. Obs. 423.)

HOGAN, J.  The city of Oneida owns and operates a municipal water supply.  On July 14th, 1905, at a special election of the taxpayers of the city, it was voted to sell bonds of the municipality to the amount of $45,000 for the purpose of enlarging and improving the water supply and the water works plant.  Under the charter of the city the board of public works was authorized to take charge and control of the water works plant, and to enlarge, improve and add to such plant as necessity required.  On July 17th, 1905, the board of public works duly published a notice to contractors inviting proposals for the work of enlargement and improvement of the water supply system of the city, according to plans, specifications and descriptions adopted by the board and filed in the office of the city clerk.  Amongst other items of work was concrete masonry estimated in dam, gates and screen chamber at 2,580 cubic yards.  The plaintiffs, contractors in the city of Oneida, presented a bid to the board of public works wherein they proposed to construct the estimated quantity, to wit, 2,580 cubic yards of concrete masonry for the sum of $5.90 per cubic yard.  Included in the proposal was other work to be done, but the question of difference between the parties has reference alone to the item of concrete masonry.

The proposal of plaintiffs was accepted by the board of public works on the 8th day of August, 1905, and, pursuant to a resolution adopted by that body, the mayor of

the city and city clerk, on the 14th day of August, 1905, entered into a contract with the plaintiffs for the work contemplated in the notice published and specified in the bid made by plaintiffs which had been accepted by the city.

While the estimated yardage was specified in the contract the city reserved the right to increase or diminish the quantity. Whatever the amount of concrete furnished by the plaintiffs the same was to be paid for at the contract price of $5.90 per cubic yard.

For the purpose of preventing any dispute as to the quantity furnished it was mutually covenanted that upon completion of the work the city engineer should measure up the work, and the superintendent of public works should thereupon make a final estimate of the same in writing showing the whole amount of the work done under the contract, and thereupon the board of public works was to pay for the same within two weeks. The superintendent was also to determine any other disputes relative to the fulfillment of the contract, and his estimate and decision was, by the terms of the contract, made final and conclusive and a condition precedent to the receipt by the contractors of any money under the contract.

By other provisions of the contract the contractor agreed that he should have no claim for compensation for extra work unless the same was ordered in writing by the superintendent and that he should not be entitled to payment or receive any payments except in the manner set forth in the contract.

January 15th, 1907, a final estimate of the work under contract 34 was made by the superintendent of public works and the city engineer, and filed in the office of the board of public works. Such final estimate showed 3,180.7 cubic yards of concrete masonry, contract price, $5.90 — $18,766.13. The plaintiffs assigned said certificate to the Farmers and Merchants' Bank and the city

paid the amount thus certified to the assignee.   Thereafter and in June following the plaintiffs presented a claim against the city for 153.75 cubic yards of concrete at $5.90 — $907.12.   This claim stated that the total amount of concrete furnished was 3,334.44 cubic yards while the claimants had been paid only for 3,180.70, " as per your final estimate which leaves a balance of 153.75 cubic yards as per above bill," amounting at prices stated to $907.12.   This action was brought to recover that amount together with a claim arising out of a separate contract and hereinafter referred to.

It was the manifest intention of the parties when the contract was made that the officers of the city should determine the quantity of work performed, and that plaintiffs should, in the absence of fraud, be bound thereby; that plaintiffs should be entitled to demand or receive payment only in the manner provided in the contract.

The final estimate and certificate of the engineer and superintendent of public works having been made subsequent to the completion of the work by plaintiffs pursuant to the covenants of the parties contained in the contract, and plaintiffs having accepted the same by virtue of an assignment thereof made by them to the bank, which final estimate and certificate was subsequently paid by the city, the plaintiffs cannot thereafter repudiate covenants entered into by them and recover for the alleged quantity of work in excess of the amount shown by the final estimate, especially in view of the terms of the contract which provided that payment of the final amount due should release the city from any and all claims thereunder.

### Contract No. 36.

The city having advertised for bids for work to grub, clear and clean the lands to be used as a site for the new storage reservoir, and to fence both the present and proposed reservoir sites, the plaintiffs presented a bid to the

board of public works wherein they proposed to grub, clear and clean 42 acres of land at $80.00 per acre.

The proposal of plaintiffs was accepted by the board of public works upon August 8th, 1905, and, by resolution of that body, the mayor of the city and the city clerk were authorized to and thereafter did on the 14th day of August, 1905, enter into a contract with the plaintiffs for the doing of said work. The contract, outside of the items referred to, was in general terms the same as the contract for the doing of work under contract number 34, and contained the same general provisions. So far as material to the contract number 36, the plaintiffs undertook thereunder to do the work of grubbing, cleaning and clearing 42 acres for $80.00 per acre. Under the head of "Clearing" in the contract it was provided: "Within the lines of the lands to be used by the city for the new reservoir site, the ground shall be cleared of brush, roots, stumps and dead or decayed vegetable matter of whatsoever nature. All bogs shall be cut and removed."

Plaintiffs seek to recover under this contract damages by reason of alleged extra requirements imposed upon them, due as alleged to the fact that at the time when the bids were about to be delivered it was represented to them by the board of public works and city engineer that the trees and stumps above the water line would have to be cut off close to the ground, and that they would not be required to dig out the trees and stumps above the water line on the reservoir site, but subsequently, and under the contract, they were obliged to do so, and they sought to recover the sum of $2,850 by reason thereof.

Upon the trial of the case the trial justice admitted evidence of statements by members of the board of public works and the superintendent of public works prior to the time that the bids were received that the contract should be interpreted as requiring the contractors to cut the stumps, brush and trees above high-water ground even

with the ground only, and as requiring them to clear and grub all work below high-water mark, consisting of about 17 acres, but as to the land above high-water mark, consisting of about 25 acres, the contract was simply to cut the trees, stump and brush even with the surface of the ground.

The evidence so adduced was contradicted on behalf of the city, and it appeared that the bids were received on the 5th day of August, while the meeting of the board of public works was not held until the 8th day of August.

The evidence having been admitted the trial justice submitted the issue to the jury, who found for the plaintiffs.

It also appeared from the evidence that in the year 1906 there was a change in the city government of the city of Oneida, and that the board of public works then in office refused to recognize any alleged agreement made by the prior board of public works.

We have concluded that the trial justice was in error in the admission of the evidence and submission of the same to the jury. Any verbal statements or agreements made, assuming they were made, before the contract in question on the 14th day of August, 1905, were merged in that agreement, and neither of the parties would be privileged to vary or contradict the provisions of the written contract which was definite and unambiguous as to the work which was to be done, namely, to grub, clear and clean 42 acres of land at $80.00 per acre; that is, grubbing, clearing and cleaning 42 acres as defined under the head of "Clearing" hereinbefore referred to. The contract on its face being clear and unambiguous, parol evidence to contradict or vary its terms and to show an alleged agreement or statement of the board of public works at the time that proposals were made for the doing of said work was inadmissible. (*Lossing* v. *Cushman,* 195 N. Y. 386.)

This claim on the part of plaintiffs does not come

# 504    ALLEN v. CITY OF ONEIDA.

within the cases cited and relied upon by counsel for respondent, which hold that where a city requires a contractor to do some work, claiming that the same is covered by the contract, and the question whether the work required is embraced within the contract is disputable and its determination surrounded by doubt, the contractor may comply with the demand under protest, and subsequently recover damages measured by the value of the extra work or materials required of him. In this case the amount of work was clearly defined by the terms of the contract, which was made subsequent to the alleged statements by the city officers. It was the duty of the plaintiffs to provide in the contract with the city the extent and character of the work which they undertook to perform, and if any limitations were to be placed upon the amount as contemplated by the invitation for proposals to have the same clearly and definitely inserted in the contract. The rights of the city and of the plaintiffs as well required that when they entered into a contract which is clear and unambiguous upon its face as to the amount of work to be performed, the price to be paid therefor and the method of payments, that all parties should be bound by the terms of such contract, otherwise the rights of the city as well as the rights of the contractors would always be subject to contradiction, resulting in litigation, and their respective rights as determined by the written instruments would no longer be controlling as between the parties.

The judgment should be reversed and new trial ordered, costs to abide the event.

WILLARD BARTLETT, Ch. J., HISCOCK, CHASE, CUDDEBACK, MILLER and CARDOZO, JJ., concur.

Judgment reversed, etc.