SERAFINI CONSTRUCTION Co., INC., Claimant, *v*. STATE OF NEW YORK, Defendant. (Claim No. 36956.)

Court of Claims, June 26, 1962.

*Hinman, Howard & Kattell* (*William L. Ransom* of counsel), for claimant. *Louis J. Lefkowitz, Attorney-General* (*Gary Axenfeld* of counsel), for defendant.

RICHARD S. HELLER, J. This claim arises out of a contract for the reconstruction of 1.54 miles of State highway running through the Village of Waterloo. The contract was dated June 1, 1956, and had a completion date of June 1, 1957. Claimant commenced work under the contract in June, 1956.

By September, 1956, claimant was prepared to commence pouring concrete pavement and had sufficient men and equipment on the job to complete the paving by November, 1956. On September 10, 1956, claimant was notified that it would not be permitted to commence paving until a decision had been reached in regard to the relocation or the relocation and replacement of curb valves for individual water services in the area covered by the contract.

On September 17, 1956, the claimant was directed to relocate all curb box valves outside the pavement area and to replace all water service connecters between the water main and the curb box valves whether or not the curb box valves were to be relocated. The notification specifically referred to a supplemental agreement to be prepared and asserted that all items involving excavation and gravel backfill for this purpose would be paid for at the unit price contained in the original contract and all other work would be paid for at a cost plus 15% for overhead and profit as there was no contract price for such additional work as " removing old pipe, installing new pipe and relocating curb box valves, etc." Claimant immediately wrote to the Department of Public Works protesting that the extra excavation could not properly be included under the unit price as bid in the original contract since it was a different type of excavation necessarily performed under different conditions and with different equipment, and further objecting to the limitations placed upon the costs to be included in arriving at the 15% in excess of costs.

Subsequently, and on October 17 there was forwarded to the claimant a proposed supplemental agreement No. 3 covering this additional work with excavation and fill provided for at the bid price of those items in the original contract with the additional work involved in water service pipes and relocation of valves to be paid at force account. On October 19, 1956, claimant returned this agreement executed by it with a letter which read in part:

" We have executed and return to you herewith the original and copies of the Agreement. However, we have executed the Agreement and forward it to you herewith upon the express condition and understanding that we protest the proposed allowance of $2.15 per yard for excavation and do not consent or agree that we be paid or receive this amount in full satisfaction for the excavation proposed by the supplemental contract. * * *

" If the State is agreeable to execution of the Supplemental Agreement, subject to the protest, reservations and exceptions contained above this is agreeable to us."

On April 25, 1957, the claimant received a letter sent by the District Engineer to the Deputy Chief Engineer of the Department of Public Works in which reference was made to approval of the Supplemental Agreement by the Comptroller's Office on December 6, 1956, with a stipulation that a deposit of moneys required from the Village of Waterloo be obtained and adding:

'' Since receipt of the approved Agreement by the contractor, he has employed qualified plumbers who have diligently progressed this work, and deferring payment pending reimbursement for the specific items of work in the partial payment estimates.

'' This additional work, being progressed on a force account basis, is approximately 90% complete. Nonpayment for the completed work has caused a definite financial hardship on the plumbing firms and the contractor and has, indirectly, created tense working relations with the local citizenry and our contractual parties.''

On June 19, 1957, there was finally forwarded to the claimant Supplemental Agreement No. 3 to which the claimant's letter of protest transmitting the Supplemental Agreement executed by it dated October 19, 1956, had been physically attached. The Supplemental Agreement showed approval on October 29, 1956, and execution by the Deputy Chief Engineer, approval for the Director of the Budget on November 5, 1956, and approval for the State Comptroller on December 6, 1956.

As a result of the requirement that claimant perform this extra work, paving could not be completed in November, 1956 as planned but was finally completed about June, 1957. The State referred to this delay in its Supplemental Agreement No. 4 dated June 17, 1957, which modification of the contract is not in dispute here.

The contract was finally completed in October, 1957 and was accepted by the Department of Public Works on November 19, 1957.

Thereafter, on April 9, 1958, the State forwarded to the claimant a completely executed Supplemental Agreement No. 5 which further modified the contract in regard to the items which had been previously modified by Supplemental Agreement No. 3. This Supplemental Agreement was apparently executed by the claimant sometime after November 23, 1957, the date of the Supplemental Agreement, and it was approved for execution by the Deputy Chief Engineer on January 2, 1958. This Supplemental Agreement had no letters, riders, statements or other efforts of reservations of rights by the claimant. It did have attached to it however, a letter dated September 14, 1956, from the District Engineer to the Deputy Chief Engineer which reviewed the situation involving some 190 service connections to the water mains which were specifically provided for in the original contract. The letter in part read: '' The contractor is presently laying foundation course R.O.B. gravel in this area.

Forms for concrete pavement foundation are ready for installation and cement for this phase of the work has been procured. However, we have ordered the contractor to defer paving until this problem is resolved.''

On May 15, 1958, the State forwarded to the claimant a '' final agreement ''. On May 22, 1958 the claimant returned the final agreement with a letter reading in part: '' We have executed and return herewith eight copies of the final agreement, to each of which we have added a rider reserving our right to make claim for damages upon the grounds stated therein. The enclosed agreements are each executed and delivered to you with the express reservation of our rights as stated in the rider attached to the last sheet of the agreement.'' The rider referred to was physically attached on the face of the signature sheet for this final agreement and specifically stated that '' the undersigned '' reserved rights and claims against the State and the right to file and prosecute claims in the Court of Claims for adequate compensation for the additional work involved in the house service connections and for the delay of approximately four months in completion of the paving work because of the extra work and the unreasonable delay of the State of approximately six months in preparing and presenting a final estimate on the contract. The final agreement with the rider attached was approved for the District Engineer on May 29, 1958, by the Deputy Chief Engineer on June 5, 1958, for the Director of the Budget on June 23, 1958, and for the State Comptroller on July 25, 1958. When the final estimate was returned to the claimant on July 29, 1958 so executed with the rider attached there was also physically attached a copy of claimant's letter of May 22, 1958. About September 27, 1958 the claimant received a check from the State of New York in the amount of $37,183.20. This was the amount which the State computed to be due as a final payment under the contract and it was negotiated by the claimant.

In its defense the State has not questioned any damage figures testified to by the claimant. It has relied entirely upon provisions contained in the Department of Public Works specifications of January 2, 1951, which constituted a part of this contract. Specifically the State relies on provisions thereof covering '' alleged claims '', '' final estimate '' and '' acceptance of final payment ''. The State urges that the decision in *Buffalo Elec. Co. v. State of New York* (4 Misc 2d 172, revd. and remanded 9 A D 2d 372, initial judgment affd. 27 Misc 2d 527)

is controlling here. But there is a distinction between the *Buffalo Elec.* case and this case. In the *Buffalo Elec.* case the attempted reservation of a right to prosecute a claim after acceptance of the final payment was based solely on some correspondence between the claimants and the State Architect and an indorsement placed by the claimant on the check issued in final payment. The court there found that this amounted to nothing more than a unilateral effort to avoid the contract.

Here, however, the State submitted an instrument for formal execution intended to settle all matters relating to this contract. The claimant refused to so execute that instrument and instead added an additional provision, which, in effect, was a modification of the provisions of the contract relating to final payment constituting a waiver. The State then had a choice. It could accept the modification or it could rest on the contract as it existed and make no further payment until the claimant had complied with the contract as it existed. (For this purpose we do not have to consider whether the original letter attached to Supplemental Agreement No. 3 actually constituted a modification of the contract and the effect of execution of Supplemental Agreement No. 5 without reservations.)

The State chose not to rest on the provisions of the contract as they existed up to its preparation of the final agreement. Instead it executed the agreement as modified by the claimant with all of the same formality that it had executed all prior modifications of the contract. This then accomplished a bilateral modification of the contract and the State cannot avoid the effect of having entered into this agreement. The claimant therefore is entitled to recover such damages as it properly established.

On the undisputed testimony the claimant is entitled to recover the sum of $13,172. This is made up of an item of $6,400 for idle equipment from September 10, 1956, to October 1, 1956, additional cost of paving $2.500, additional cost of installing water services $500, additional cost of traffic maintenance $1,487, overhead expenses 10% and profit of 10%. The State chose not to question any of these items of damage testified to by the claimant and the court therefore has no evidence before it as to the reasonableness or propriety of these items of damage other than the testimony of the claimants.

The claimant has also sought interest from January 17, 1958, 60 days after acceptance of the contract, to March 27, 1959, which is six months from the date of the final payment and

designated by the claimant as the date of the accrual of the action, and from August 24, 1959, the date on which the claim was filed to the date of judgment. The court can find no basis for an award of interest prior to September 27, 1958. There is no proof whatsoever in the record as to what would be a reasonable time for the preparation of a final estimate and payment. There is no provision in the contract for any such reasonable time, although the contract clearly contemplates some lapse of time between the acceptance of the work and the completion of the final estimate. (*D'Angelo* v. *State of New York*, 7 Misc 2d 783.) Here until the acceptance of the modification made by the claimant in Supplemental Agreement No. 5 and accepted by the State, the claimant was under a contractual obligation to present itemized statements of all of its claims which it failed to do. Furthermore, the State had a completely reasonable basis for delaying its execution and delivery of Supplemental Agreement No. 5 in view of the modification proposed therein by the claimant.

The court therefore finds that the claimant is entitled to the sum of $13,172 with interest thereon from September 27, 1958, to March 27, 1959, and from August 24, 1959, to the date of entry of judgment.

Claimant makes one further claim which is for interest on the final payment of $37,183.20. Claimant asserts that $21,716.03 of this was attributable to the general contract and $15,467.17 was attributable to extra work under Supplemental Agreements 3 and 5. The court finds nothing in the records to support this contention by the claimant. There is no schedule of payments made or the basis on which such payments were made. The claimant's assertion that a payment on the general contract should draw interest from January 17, 1958, 60 days after the acceptance of the job, has already been disposed of. Its contention that interest should be paid on the sum it claims was attributable to the extra work from November, 1956, to September 27, 1958, is completely unsupported in the record. As of April, 1957 the extra work was only 90% completed, and while there apparently were some delays in payments as the work progressed in violation of the contract, there is no evidence before the court from which it can make any finding as to a specific date from which the claimant should be entitled to interest.