### F. H. McGRAW & CO.
### v.
### NEW ENGLAND FOUNDATION CO., Inc.
### No. 4751.

United States Court of Appeals First Circuit.

Feb. 2, 1954.

---

Ralph R. Weiser, New York City (Abraham Belilove, Providence, R. I., Joseph Lotterman, New York City, and Arcaro & Belilove, Providence, R. I., on brief), for appellant.

Stephen B. Ives, Jr., Providence, R. I. (Stuart H. Tucker, Matthew W. Goring, and Hinckley, Allen, Salisbury & Parsons, Providence, R. I., on brief), for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from a judgment entered May 6, 1953, in the United States District Court for the District of Rhode Island granting plaintiff's motion for summary judgment in the sum of $10,705.30 with interest from August 21, 1951, and costs.

The defendant, a New Jersey corporation, was the general contractor for the Blackstone Valley Sewer District Commission, State of Rhode Island, for the construction of the Bucklin Point Sewage Treatment Plant in East Providence, Rhode Island. On August 8, 1950, the defendant entered into a subcontract with the plaintiff, a Massachusetts corporation, for the placement of piles [1] and caissons [2] in the foundation work for

---

1. Piles—Steel shells are driven into the ground and filled with cement, both remaining in the ground.

2. Caissons—Steel shells are driven into the ground and filled with cement, but the steel shells are removed.

several parts of the construction. This subcontract was subsequently amended by five supplemental "Change Orders." The dispute between the parties concerns "Item 4" in the subcontract and "Change Order No. 2", relating to pile and caisson foundations for the "By Pass and Effluent Channel" and "Outfall."

The complaint alleges that a sum of $18,732 was allocated to the foundation work of the "By Pass and Effluent Channel" and that the defendant was entitled to deduct $5,801.90 from the $18,732 for linear feet of piles and caissons estimated as necessary in the specifications for the Bucklin Point Sewage Treatment Plant, but not in fact found necessary or in fact constructed by the plaintiff. The plaintiff admits the payment of $1,359.00 on account of this foundation work. The answer denies these allegations and, as an affirmative defense, pleads payment in full. The plaintiff filed affidavits and a motion for summary judgment. The defendant filed counter affidavits and a cross motion for summary judgment.

The subcontract stipulated that any orders issued by the District Commission to the defendant under the prime contract which related to the subject matter of the subcontract were binding and conclusive upon the plaintiff and that the plaintiff was bound to the defendant by the applicable terms and provisions of the prime contract. On December 21, 1950, by "Change Order No. 2",[3] the plaintiff was directed to install the pile and caisson foundation for Items No. 2 and No. 4 of the prime contract for the price of $21,490.00 and $64,782.00 respectively. On May 4, 1951, by "Change Order No. 3", all the caisson and pile work in the "Outfall" of Item No. 4 was eliminated and substituted work was ordered. The sum of $46,050.00 was to be deducted from the contract price on account of this elimination. By deducting this amount from the total price of $64,782 for Item No. 4, which included both the "By-pass and Effluent Channel" and the "Outfall", it is seen that the foundation work in the "By-pass and Effluent Channel" was valued at $18,732.

As a result of a jurisdictional labor dispute involving laborers hired by the plaintiff to do the caissons work, the defendant requested the District Commission to cancel construction of the piles and caissons in the "By-pass and Effluent Channel". The Commission agreed to the cancellation and by "Construction Agreement No. 5" ordered the substitution of a concrete slab. Under the terms of the subcontract, the defendant could have ordered the plaintiff to construct the substituted concrete slab, but it did not do so. Prior to the substitution, the plaintiff had placed eight of the sixty piles and caissons planned for the "By-pass and Effluent Channel". The parties are now in disagreement as to the proper amount payable to the plaintiff for this work.

The plaintiff contends that the "additions and deductions" clause [4] of the sub-

3. Part of this "Change Order No. 2" provided:
   Item No. 4.
   By-pass and Effluent Channel:
       34 — 18" piles
       18 — 24" piles
       4 — 30" caissons
       4 — 48" caissons
   Outfall: 230 — 24" piles
            6 — 30" caissons
            3 — 36" caissons
            For the Sum of _____ $64,782.00

4. "The following unit prices are to apply for additions and deductions as follows:
       Item 8a — 18" cast-in-place concrete piles @ Twelve and no/100 Dollars
       ($12.00) per linear foot

contract determines the amount payable to it. Computations based upon the Engineer's table of the assumed bottom elevations and the actual bottom elevations of the piles and caissons show that, in placing eight of the sixty piles and caissons, plaintiff actually placed 46.0 linear feet of 18″ piles, as against an assumed total of 286.05 linear feet. Plaintiff then argues that, applying the "additions and deductions" clause, $2,880.60 (240.05 linear feet at $12.00/ft.) should be deducted from the contract price of $18,732. Applying the same process to the 24″ piles, the 30″ caissons, and the 48″ caissons,[5] plaintiff concludes that a total deduction of $6,666.20 (not $5,801.90 as alleged in the complaint) is to be subtracted from the contract price, leaving a balance of $12,065.80 due it for placing eight of the sixty piles and caissons. The defendant, on the other hand, asserts that the "additions and deductions" clause of the subcontract does not apply to the elimination of the piles and caissons in the "By-pass and Effluent Channel", and contends that the plaintiff should only receive the reasonable value of the eight of the sixty piles and caissons actually placed.

Our main assistance in interpreting the "additions and deductions" clause of the subcontract is found in the underlying prime contract, the applicable terms of which were incorporated into the subcontract. The blank proposal form, which is part of the prime contract, states in part:

"The work has been divided into two groups of items, Group I contains Items 1 through 7, inclusive, for constructing the various structures, roads, etc. The work involved in each item is mentioned briefly in the Proposal and described more fully in the Detailed Specifications. For most items there is a corresponding alternate. For example, Item 2A is an alternate to Item 2. It is not intended that the contract, as awarded, will include both an item and the corresponding alternate item. A lump-sum price is to be bid for each item. Each such lump-sum price shall include all work which would be necessary to build the item complete (*including* earth and rock excavation, *cast-in-place concrete piles, and concrete-filled caissons*) as indicated on the drawings or specified, on the assumption that rock and hardpan will actually be found as indicated on the drawings.

"Group II includes Items 8a through 19. These items provide compensation for doing certain types of work of presently undetermined necessity, and also provide convenient means of adjustment of compensation should the quantities of certain classes of work vary from those on which bids are to be based. Under Items 8a to 8g, inclusive, the bidder shall bid unit prices for such adjustment of compensation for cast-in-place concrete piles and con-

> Item 8b — 24″ cast-in-place concrete piles @ Fourteen and no/100 Dollars ($14.00) per linear foot
> Item 8c — 30″ concrete-filled caissons @ Fifteen and no/100 Dollars ($15.00) per linear foot
> Item 8d — 36″ concrete-filled caissons @ Eighteen and no/100 Dollars ($18.00) per linear foot
> Item 8e — 40″ concrete-filled caissons @ Twenty-Four and no/100 Dollars ($24.00) per linear foot
> Item 8f — 44″ concrete-filled caissons @ Twenty-Six and no/100 Dollars ($26.00) per linear foot
> Item 8g — 54″ concrete-filled caissons @ Forty-Four and no/100 Dollars ($44.00) per linear foot."

5. The unit price for the 48″ caissons was agreed by the defendant and the District Commission to be that listed for the 44″ caissons, no unit price having been set for the 48″ caissons.

crete-filled caissons; * * *. The adjustment prices are NOT applicable to entire items in GROUP I, which may be included or omitted." (Emphasis in contract.)

This is followed by the proposal which is also a part of the prime contract. Prefacing the unit prices of the Group II items, the proposal states in part:

"Should the quantities of cast-in-place concrete piles or concrete-filled caissons be increased or decreased by order or approval of the Engineer, from those based on the assumed rock surface, the undersigned agrees that the following unit prices shall be the basis of payment to him or credit to the Owner for such increase or decrease, except that such adjustment prices shall not apply to entire items in Group I which may be included or omitted."

■ We believe that these provisions reveal that the parties only intended the "additions and deductions" clause to apply to minor variations between the assumed and the actual quantities necessary for the placement of sixty piles and caissons. The unit prices specified in the "additions and deductions" clause for the piles and caissons were less than one-half of the lump sum price for the piles and caissons in the "By-pass and Effluent Channel" in Item No. 4 of the subcontract. Also the phrase in the prime contract: "These items * * * provide convenient means of adjustment of compensation should the quantities of certain classes of work vary from those on which bids are to be based, * * *" indicate that the "additions and deductions" clause was "clearly applicable only to those inadvertent errors or differences between careful and precise specifications and performance that will inevitably creep in where contracts involve vast amounts of labor and materials. It does not apply to a change of a substantial nature." Blair v. United States, 8 Cir., 1945, 147 F.2d 840, 847, modified 150 F.2d 676. Plaintiff is here attempting to deduct a sum determined by the unit prices of the "additions and deductions" clause from the lump sum price when 52/60ths of the entire work originally planned for the "By-pass and Effluent Channel" has been cancelled. But this type of clause " * * * " is limited in its meaning and effect, by reason, and by the object of the contract, to such modifications of the contemplated work as do not radically change its nature and its cost. * * *" Salt Lake City v. Smith, 8 Cir., 1900, 104 F. 457, 465. It is designed to "cover a variation, not a transformation." Montrose Contracting Co. v. County of Westchester, 2 Cir., 1936, 80 F.2d 841, 843, certiorari denied, 1936, 298 U.S. 662, 56 S.Ct. 746, 80 L.Ed. 1387.

Also, the phrase, "Should the quantities * * * be * * * decreased * * * from those based on the assumed rock surface * * *" indicates that the parties meant the "additions and deductions" clause to apply only to minor variations resulting from discovering that the actual bottom rock surface was different from the assumed bottom rock surface. The affidavit of the Chief Engineer of the District Commission reveals that an elaborate chart was made of the top and assumed bottom elevations of the sixty piles and caissons and of the top and actual bottom elevations of the eight completed piles and caissons. It is clear that the purpose of this chart was to compare the lengths of sixty actually placed piles and caissons with their assumed lengths at the time of the making of the contract, and then to adjust the lump sum price by the unit prices of the "additions and deductions" clause for any resulting difference. But in the instant case, with respect to fifty-two of the piles and caissons, the plaintiff is attempting to apply the "additions and deductions" clause to deductions that resulted, not from variations between the actual and the assumed bottom rock surface, but from a cancellation entirely independent of any difference between the actual and the assumed bottom rock surface. Nothing in the prime contract or subcontract warrants such an extension of the application of the "additions and deductions" clause. See United States, for Use and Benefit of Pierce Steel Pile Corp. v. I. B. Miller, Inc., 2 Cir., 1936, 81 F.2d 8.

The plaintiff contends that the phrase, "* * * except that such adjustment prices shall not apply to entire items in Group I which may be included or omitted" shows that the parties intended to exclude the unit prices only when an entire item of the prime contract was omitted. And since "conduits, sluice gates and miscellaneous outside work" specified in Item No. 4 of the prime contract were not omitted, then, plaintiff urges, the negative implication of this phrase is that the unit prices do apply to all omissions other than an omission of an entire item of the prime contract.

But the plaintiff in the subcontract expressly assumed all of the terms and provisions of the prime contract applicable to its work with the same force and effect as though they were fully set forth in the subcontract. Therefore, the "except" clause in the prime contract, when read into the subcontract, would apply to an omission of all the foundation work in Item No. 4 of the subcontract. Even if this is so, the plaintiff contends that since the cancelled fifty-two piles and caissons did not comprise an entire item of the subcontract, the implication is that the unit prices shall apply to their omission. However, we do not believe that this clause necessarily limits the nonapplication of the unit prices to only an omission of an entire item. The provisions preceding and following the "except" clause indicate that the unit prices do not apply to a change of a substantial nature. See Employers' Liability Assur. Corp. v. Morrow, 6 Cir., 1906, 143 F. 750.

Plaintiff also asserts that Art. XXIX of the prime contract substantiates its claim.[6] But under Art. XXIX

a deduction for diminished work may only be made at the unit prices if there are "unit prices stipulated for such work." As we have already held, unit prices were not stipulated for the cancellation of fifty-two of the piles and caissons, and thus the first two sentences of the article are not pertinent. However, the last sentence of the article applies, and, as plaintiff admits, it precludes any claim for sums other than those computed under the unit price schedule in the event of diminutions of the work. But in contending that it should be paid about 64% of the contract price for the placement of only eight of the sixty piles and caissons, plaintiff, in effect, is making a claim for sums resulting from diminished work. Plaintiff justifies this assertion on the grounds that its subcontract with the defendant is a "basic price" contract which places the risk of loss from a cancellation upon the defendant. This type of contract, plaintiff argues, transfers the overhead costs of the cancelled fifty-two piles and caissons upon the remaining eight piles and caissons, and thus assures the plaintiff of recovery of some of its costs resulting from the cancellation. But the contention that the subcontract is a "basic price" contract is merely a conclusion drawn from plaintiff's erroneous interpretation of the "additions and deductions" clause. Also there is nothing in the record to substantiate the plaintiff's contention that this contract is a so-called "basic price" contract. Provisions other than those we have already mentioned, indicate that the risks of losses from cancellation are placed upon the plaintiff [7] and not upon the defendant.

The defendant argues that the district court erred in not finding that "final pay-

---

6. "Alterations

"Art. XXIX. The Engineer may make alterations in the line, grade, plan, form, dimensions or materials of the work or any part thereof, either before or after the commencement of construction. If such alterations increase or diminish the quantity of work to be done, adjustment for such increase or decrease shall be made at the unit prices stipulated for such work under this contract, except

that if unit prices are not stipulated for such work as may be added, compensation shall be made under the item for Extra Work. If such alterations diminish the quantity of work to be done, they shall not warrant any claim for damages or for anticipated profits on the work that is dispensed with."

7. Par. 9 of the subcontract states:
"In the event that the project shall be abandoned by the Owner, or if, for any

ment", as defined in the subcontract,[8] had been made by the defendant to the plaintiff. The uncontested facts on this issue are that prior to March 3, 1952, the District Commission, in response to plaintiff's written request, withheld the sum of $38,980.53 from the monies to be paid by the District Commission to the defendant. As a result of a conference between counsel for both parties on March 3, 1952, the plaintiff withdrew its objection to the District Commission's payment of $27,410.53 to the defendant. Thereafter, the plaintiff received and deposited a check from the defendant in the sum of $27,410.53. The check and voucher made no mention of "final payment."

■ Ordinarily whether or not there has been an acceptance of a final payment depends upon the intention of the parties. Fredburn Const. Corporation v. City of New York, 1939, 280 N.Y. 402, 21 N.E.2d 370. In the instant case, the pleadings, motions, and affidavits before the lower court clearly reveal that there is no genuine issue on the fact that the plaintiff did not consider its acceptance of the check as an acceptance of the final payment due it. The defendant states, however, that the plaintiff's intention is immaterial. It argues that the check included " * * * sum or sums retained by the Contractor as provided herein * * * ," and that under the provisions

of Article 26 plaintiff was never entitled to these sums unless "final payment" had previously or simultaneously been paid.

But the acceptance of the retained percentages does not necessarily constitute under the provisions of Article 26 an " * * * acceptance of the Subcontractor of * * * the final monies due the Subcontractor." Article 26 neither states nor implies that the inclusion of the retained percentages in a payment automatically makes such a payment a final one. And it is clear from Exhibit A attached to the affidavit of plaintiff's counsel that the plaintiff did not accept the check of $27,410.53 as " * * * final monies due * * * " it. In Exhibit A it is distinctly stated, "I expect to commence suit for the balance of the claim early next week."

■ Since plaintiff is not entitled to recover the contract price less deductions fixed by the "additions and deductions" clause, the case must be remanded for a trial to determine the reasonable value of the eight of the sixty piles and caissons. As this factual issue was not relevant under plaintiff's motion for summary judgment, the fact that both parties moved for summary judgment does not bar the plaintiff from a trial on this issue. Walling v. Richmond Screw Anchor Co., 2 Cir., 1946, 154 F.2d 780, certiorari denied, 1946, 328 U.S. 870, 66 S.Ct. 1383, 90 L.Ed. 1640; Garrett Biblical Institute

---

reason whatsoever, the Contractor's contract with the Owner is terminated by the Owner, the Contractor shall have the right to terminate and cancel this agreement and require the Subcontractor to cease all work thereon forthwith, and the Subcontractor shall not be entitled to receive, and does hereby waive, any prospective profits or damages for labor unperformed and/or materials unfurnished, as well as any and all prospective profits or compensation which the Subcontractor might have earned had he been permitted to complete his performance of this agreement."

Art. II of the prime contract also provides in part: " * * * The Contractor shall bear all losses resulting to him or to the owner on account of the amount or character of the work, * * * ."

8. "26. The acceptance by the Subcontractor of the final payment under this agreement (the words 'final payment' referring to and being intended to designate the final monies due the Subcontractor hereunder, less any sum or sums retained by the Contractor as provided herein) shall be and shall operate as a complete and unconditional release to the Contractor of any and all existing or future claims, demands or causes of action by the Subcontractor against the Contractor, known or unknown, whatever they may be or howsoever they may arise, as well as for every act and neglect of the Contractor and any person or firm for whom the Contractor shall or may be deemed responsible, except solely the claim of the Subcontractor to the retained percentage withheld by the Contractor as provided for herein."

v. American University, 1947, 82 U.S. App.D.C. 263, 163 F.2d 265; Begnaud v. White, 6 Cir., 1948, 170 F.2d 323.

The judgment of the district court is reversed and the case is remanded for further proceedings consistent herewith.