Bernard Ryan, P. J.
Claimant corporation contracted with the State of New York through its Department of Health to do electrical work in the rehabilitation of the J. N. Adam Memorial Hospital for a total amount of $297,200. The work was completed and claimant was paid the amount due on its final estimate which was the sum of $23,995. In accepting payment of the State Comptroller’s check for that amount claimant, by its president, and, as said president testified, upon the advice of claimant’s attorney, indorsed the check as follows: “ This check is endorsed and accepted without waiver of rights to proceed, against the State of New York to recover for additional costs, as stated in our letter of June 19th to Mr. C. J. White, State Architect.” There is no suggestion, anywhere in the record of this trial, that either of the attorneys now appearing herein was the person who gave the advice.
This suit against the State of New York demands damages in the amount of $108,068.14, with interest, based upon delays and interferences, refusal of site and extra work performed in carrying out the contract. On the third day of the trial and after the hearing of extensive testimony relating to the alleged interferences and delays and the costs resulting therefrom, which testimony added up to some 400 pages of stenographer’s transcript, and which, for the most part was given by other witnesses than he, the claimant’s president, upon cross-examination, was confronted by the trial deputy attorney-general with the- fact of his acceptance on behalf of the corporation of the cheek for final payment. Shortly thereafter claimant rested its case and the Attorney-General moved for dismissal of the claim upon the ground, “ specifically in that it appears from the contract, claimant’s Exhibit No. 3 in evidence, that the acceptance by the contractor of the final estimate constitutes a release and waiver of claims, and that the evidence indicates that he did receive the final payment under the contract, thereby releasing and waiving the claim which he now asserts.”
The court reserved decision upon that motion and, claimant’s testimony as to the elements of its alleged damage having been *174 presented at length and the trial being in its third day, the court proceeded to hear the State’s defense upon the merits in order that a complete record of the issues would be made. Long after the conclusion of the trial, claimant’s attorneys made application to reopen the trial to present further evidence on the subject of the acceptance of the final payment. The AttorneyGreneral did not object to the reopening. Further oral and documentary evidence having been received, and counsel having submitted briefs, the court now proceeds to decide the issue of the effect of acceptance of the check and its indorsement and that question only.
The clause in the contract upon which the defense relies to defeat this claim reads as follows: “ The acceptance by the Contractor of the last payment on this contract as hereinbefore provided, shall be and shall operate as a release to the State of New York and each official, agent, representative and employee thereof, from all claim and liability to the contractor and all subcontractors for anything done or furnished for or relating to the work, or for any act of omission of the State of New York, its officials, agents, representatives and employees, relating to or affecting the work, except only the claim against the State of New York for the remainder, if any there be, of the amounts kept or retained as provided in this contract.”
This clause, in essence, is no different from that passed upon by the Court of Appeals in Cauldwell-Wingate Co. v. City of New York (269 N. Y. 539), and again in Nicholas v. City of New York (293 N. Y. 704). The similar clause in New York City contracts was also reviewed by the Supreme Court, Appellate Division, First Department, in Oakhill Contr. Co. v. City of New York (262 App. Div. 530).
However, it is the contention of claimant herein, and it is for that reason that claimant’s attorney asked for a reopening of the case, that the acceptance of the last payment voucher does not ipso facto put the release clause into operation and that the defendant has the burden of demonstrating, by a fair preponderance of the evidence, that such acceptance was intended and understood by the one accepting to operate as such a release. Such contention is directly contrary to the holding in the Oakhill case. Claimant’s counsel urge that whether or not a contractor is barred by such an acceptance presents an issue of fact to be tried, and cites Fredburn Constr. Corp. v. City of New York (280 N. Y. 402) in support of their argument. To bring this claimant within what they contend is the scope of the Fredburn ruling they have supplemented their original record of trial *175 with certain exhibits which they deem important and which we quote in full below. We begin, however, with an exhibit offered by the defense. It is a letter from the State architect to the claimant dated May 14,1953 and reads as follows: ‘ ‘ The funds appropriated for your contract expire September 15, 1953. If you are to receive final payment before the Spring of 1954, it will be necessary for your contract to be completed satisfactorily and payment application to be submitted several weeks before September 15, 1953.”
We now quote a letter from the State architect to the claimant under date of June 16,1953: “In the preparation of your final payment certificate we have considered the various causes of delay on your contract which have resulted in completion after the specified date. We are extending the contract date of completion to June 30, 1953 in order to compensate for delays deemed beyond your control and to allow sufficient time so that the final certificate can be issued and sent to the Comptroller within the extended period. This extension is given in accordance with Article 21 of the General Conditions.”
We next quote so much of article 21 of the General Conditions as is pertinent:
‘ ‘ Article 21. Time of Completion
“ 85. If the Contractor is delayed in the completion of his work by any act or neglect of the State, or by changes ordered in the work, or by any cause which the State Architect shall deem to justify the delay as being beyond the Contractor’s control, then the time of completion shall be extended for such reasonable time as the State Architect may decide. * * *
“ 87. No charges or claim for damages shall be made by the Contractor for any delays or hindrances, from any cause whatsoever, during the progress of any portion of the work embraced in this contract. Such delays or hindrances shall be compensated for by an extension of time as above provided.”
Under date of June 19, 1953 the claimant wrote to the State architect:
“ With reference to your letter of May 14th, regarding final payment which is past due in connection with the electrical work done for you under the above contract at the J. N. Adam Memorial Hospital Perrysburg, New York which work was finally completed on May 5th, 1953.
“ You will note that this work was completed before you wrote the letter — your representative Mr. Jones agrees that everything has been done completely and satisfactorily and final payment is up to you — there is nothing more that we can do.
*176 “ We do however, wish to give you notice to the effect that we have extra costs incurred by reason of the fact that the State of New York prevented us from completing this contract on December 31st. 1951 as specified in your contract. When we took the contract we set up a force on the job to do the work and complete it as per contract. The Hospital authorities would not surrender the rooms for us to work in so we could not proceed on schedule. Further your office made changes in the switchboards, etc. which delayed the project and we have' had a total delay of 17 months during which time increased costs of union labor was incurred and this was certainly your fault and not ours. Further than that the cost of carrying the job on, as you can well appreciate, for this extended period is substantial and we are accordingly preparing a claim which we hope will receive your careful consideration on these extra costs.”
To this the State architect replied under date of June 22,1953: “ We acknowledge your letter of June 19th. about the delays. Contract specifies that delays from causes beyond your control shall be compensated for by an Extension of Time, and our letter of June 19th is an extension of time for that purpose, as stated therein, all in accordance with contract requirements. ’ ’
It was stipulated upon the trial that this last exhibit was in error in its reference to a State architect’s letter of June 19 and that the reference intended was to the letter of June 16 which is Exhibit 18.
Now the testimony of the claimant’s president is that June l9, 1953 fell on a Friday; that on June 23 the letter of June-22, Exhibit 20, and the check, Exhibit B which is dated June 19, 1953, were brought to his attention by the treasurer of the company; that he directed the treasurer to call the company’s attorney; that as a result the indorsement, which we have quoted, was typed on the back of the check; thereupon the amount of the check was entered upon the company’s cash receipt ledger and the proceeds thereof were deposited to the company’s credit in a Buffalo bank.
The claimant’s president testified that he understood that the check ‘1 was the final payment of the contract amount due us as originally stated ” but that he did not understand that it ‘ ‘ was in final payment for all charges for extra work and allowances for omissions in connection with the work * * * certainly not.”
Unfortunately, whether or not the claimant’s president understood that the check was in final payment for all charges for extra work and allowances, is not the test. Obviously he had in *177 mind (a) that he wanted the use of the funds due on the contract and represented by the check and (b) that'he did not want to release his company’s claim for extra costs referred to in his letter of June 19. But he was ill-advised. He -attempted by unilateral action to modify the terms of his corporation’s contract. Even if the State architect had assented, his power to bind the State of New York in a waiver of the contract’s provisions would be no greater than-that of the city’s subordinates in the Oakhill case.
This court is well,aware that the release clause in the pontract is harsh and has already expressed itself, as far back.as 1952, in Rusciano & Son Corp. v. State of New York (201 Misc. 690) wherein we reviewed many cases wherein a procedure had been adopted in aid of a contractor obtaining the balance of moneys admitted by the State to be due him on his contract and at the same time protecting his interests with respect to any claim for extras or for damages which might -be rightfully his. As a matter of historical interest, it may be noted that in 1953 there was introduced in the Legislature a bill proposing to amend the State Finance Law to prohibit the inclusion in public works contracts of a final payment release clause such as the one herein considered. The bill did not progress beyond committee. In 1954 a bill designed to accomplish the same -purpose passed the Senate but died in the Ways and Means Committee of the Assembly.
Turning now to the Fredburn case, upon which claimant’s counsel rely, if we understand it correctly the Court of Appeals ruled merely that the city’s motion for summary judgment ought not to have been granted. Counsel notes that the Fred-bum case was cited, favorably, by the United States Court of Appeals, Second Circuit in McGraw & Co. v. New England Foundation Go. (210 F. 2d 62). This, also, was a reversal of an order for summary judgment.
In the case of Podzuweit v. State of New York (192 Misc. 528) the claimants had filed and served a notice of intention to commence suit against the State 11 months before the district engineer forwarded to them, for signature, the -formal agreement. We held that this and other incidents would, perhaps, spell out a waiver of the contract provision. Hence, it was uossible that there were issues of fact to be tried. In this case neither the indorsement on the check nor the claimant’s letter of June 19 make out a suggestion of any waiver-by the State. The architect’s letters, Exhibits 18 and 20, contravene such a suggestion.
*178 We do not find in any of these three cases authority for denying the Attorney-General’s motion upon the record herein. Upon that record the motion made at the conclusion of the claimant’s testimony and renewed at the conclusion of the trial must be granted and the claim dismissed. Thereupon it becomes unnecessary for this court to make findings upon the several issues of delays and interferences and of extras supplied.