Richard S. Heller, J.
About December 22,1950, the claimant and the State entered into a written contract known as contract No. FA BQE 50-4. Under this contract the claimant agreed to construct for the State of New York a section of the Brooklyn-Queens Expressway, including the Williamsburg Bridge connection viaduct and the Meeker Avenue viaduct on an itemized proposal totaling $2,290,468. The principal construction features consisted of foundations, substructures, steel superstructures and concrete structural slabs, walls and abutments, grading, paving, and utilities for the Expressway.
The work was completed and accepted by the State on March 9, 1953. Thereafter the State forwarded to the claimant a final estimate dated June 8, 1953. This final estimate was returned to the State together with a letter from the claimant verified by claimant’s vice-president setting forth that the final estimate was incorrect in that it failed to include payment for about 40,000 pounds of reinforcing rods installed in cast-in-place piles for which the unit bid price was 15 cents per pound, making a total not included for payment of $6,000 and further that the State had “ wrongfully and arbitrarily” refused to permit the claimant to subcontract the work of paving the road, construction of curbs and sidewalks and other incidentals included in 15 separate items of the contract, which refusal resulted in damage to the claimant in the amount of $84,843. Subsequently, the State forwarded to the claimant on December 17, 1953 a check in the amount of $77,008.13, which was the amount admittedly due from the State to the claimant under this contract. This check was returned by the claimant in order to avoid the provision contained in the contract that acceptance of a final payment constituted a release of any further claims.
*475 On January 7, 1954 the claimant filed this claim seeking recovery of the sum of $84,771.70 based upon ah alleged arbitrary and wrongful refusal to permit subcontracting of certain work, the sum of $6,000 for the failure of the State to pay for 40,000 pounds of reinforcing rods and for the sum of $77,008.13 which represented the balance due under the contract aside from the disputed items together with interest on each of these sums. Subsequently the claim for $77,008.13 was severed from the other items and recovery of that amount was granted but the question of the claimant’s right to interest thereon was specifically reserved for determination with the other two items contained in the claim.
The issues before this court for determination on this trial are:
1. Is the claimant entitled to recover for damages alleged to have resulted from the State’s refusal to permit subcontracting of certain items of the contract?
2. Is the claimant entitled to recover for reinforcement used in cast-in-place piles?
3. "What amount of interest is claimant entitled to recover?
In entering into this contract the claimant agreed to ‘ ‘ furnish all of the materials, appliances, tools and labor of every kind required, and construct and complete in the most substantial and workmanlike manner ” the designated work in accordance with the contract and to “do everything required by the Contract (Contract Documents) as defined herein ”.
One of the provisions of the contract was an agreement by the contractor that in accordance with section 138 of the State Finance Law, the contractor was prohibited by law “ from assigning, transferring, conveying, sub-letting or otherwise disposing of the same [contract], or of his right, title or interest therein, or his power to execute such contract to any other person, company or corporation, without the previous consent in writing of the department or official awarding the same.” The contract also contained certain provisions required in all contracts involving Federal aid funds. The contract itself bears a notation of concurrence by the Bureau of Public Works of the United States Department of Commerce dated November 29,1950 and in article 1 thereof specifically refers to Federal aid. Among these provisions required for contracts involving Federal aid funds was article 7 which provides:
“ The contractor shall perform with his own organization work amounting to not less than fifty percent of the remainder obtained by subtracting from the total original contract value *476 the sum of any items designated in the contract as “ Specialty Items ”.
“ Any items that have been selected as “ Specialty Items ” for the contract are listed as such in the Special Provisions found elsewhere in the contract.
“No portion of the contract shall be sublet, assigned or otherwise disposed of except with the written consent of the contracting officer or his authorized representative.
“ Request for permission to sublet, assign, or otherwise dispose of any portion of the contract shall be in writing and accompanied by a showing that the organization which will perform the work is particularly experienced and equipped for such work. * * * Consent to sublet, assign or otherwise dispose of any portion of the contract shall not be construed to relieve the contractor of any responsibility for the fulfillment of the contract.”
It is undisputed that no section of the contract contained any listing of “ Specialty Items ”.
The dispute which has arisen here is limited to the right of the claimant to delegate the performance of a contractual duty by subcontracting for a portion of the work with another contractor. At the time of entering into this contract the claimant had no right to delegate performance of the contract or any portion thereof. He could acquire such right only by the express consent of the Superintendent of Public Works and the contract clearly provided that this consent would not be granted for more than 50% of the total original contract value. This prohibition against the delegation of performance is a valid provision of the contract. (2 Williston on Contracts [rev. ed.], p. 1217; Restatement, Contracts, § 160.) It does not involve any question of an invalid restraint upon the right of alienation and it was not repugnant to public policy since the contractual provisions were a reflection of statutes and Federal regulations. Unless there was some implied obligation on the part of the Superintendent of Public Works to consent to a delegation of the duty of performance in whole or in part, a refusal to so consent could not constitute a breach of contract by the State. Such refusal could not be either a failure to perform an act promised or a prevention or hindrance of the performance which the claimant had agreed to deliver. Thus there could be no breach by the State. (Restatement, Contracts, § 312 )
Claimant urges that there was an on part of the State to consent to delegation of performance since the nature of the construction industry required subcontracting. *477 No such requirement may be implied as a provision of this contract on the evidence presented. The restrictions on delegation of performance were clear and unambiguous and voluntarily entered into by the claimant.
The claimant further urges that there was an obligation on the part of the State to consent to this specific request to delegate performance by reason of the State’s prior conduct. Prior to March 11, 1952 the claimant had requested and been granted permission to delegate performance of 77 items of the contract to 18 different subcontractors, the total original contract value of which amounted to about $1,707,000. The largest value of these subcontracts was the structural steel in the amount of $1,109,590. On March 11, 1952 the claimant wrote to the district engineer requesting permission to delegate the performance of 15 separate items relating to the paving of the roadway, installation of curbs and sidewalks and items of work incidental thereto to Joseph M. Sorge, Inc. The total contract price for these items was $72,285 which in the final estimate was reduced to $63,529.35, in accordance with the contract due to lesser quantities used.
The evidence is not clear as to just what commitment Joseph M. Sorge, Inc. had made to the claimant for performance of this work on March 11, 1952 but giving the claimant the most beneficial aspect of the testimony, the proposed subcontractor had agreed to perform the work exclusive of material costs at a price of about $34,000. On March 18, 1952 the claimant was advised that permission to subcontract this work was refused on the ground of the high percentage of the original contract value which had already been subcontracted. The claimant never submitted to the Superintendent of Public Works any showing that Joseph M. Sorge, Inc. was particularly experienced and equipped for such work as required by the contract. The claimant protested the refusal to permit the subcontracting to a deputy chief engineer but claimant did not follow the procedure provided for in the contract when a contractor is of the opinion that any order of the engineer violates the provisions of the contract.
The only ground communicated to the claimant for the refusal to consent to the subcontract was the percentage of the work which had already been subcontracted although the deputy chief engineer had been advised that the proposed subcontractor had not proved entirely satisfactory in the performance of other work. .
The failure to communicate subcontract could not affect the claimant’s right unless the *478 State was under some obligation to consent to the subcontracting of this work. This court can find no basis on which the State was under any such obligation. The right to subcontract was clearly left by agreement of the parties to the discretion of the Superintendent of Public Works. The provision was for the protection of the State and could be waived by the State but a refusal to consent to a delegation of performance could not give rise to a cause of action against the State since it could not constitute a breach of the agreement made by the parties.
The cases dealing with a landlord-tenant relationship presented by the claimant wherein the waiver of a restriction against a subletting destroys the restriction, are not applicable to a contractual restriction upon the right to delegate performance. The contract here clearly contemplated and gave to the Superintendent of Public Works a right to consent to subcontracting in some instances and to refuse to permit subcontracting in other instances. The evidence does not establish that the action of the State violated any implied requirement for fair dealing between the parties. The parties entered into the contract with the contractor agreeing to perform all and in any event, not less than 50% of the total contract value with his own organization. His argument that the State showed bad faith in requiring him to perform only about 25% of the contract with his own organization is untenable.
Likewise the claimant’s argument that some $1,700,000 of the total original contract value involved specialty items is untenable and cannot assist his position here in any way. The claimant agreed by signing the contract without any special provisions listing specialty items, that there were no specialty items and it represented that it was prepared to do all of the work and certainly not less than 50% of the total original contract value with its own organization. If it were not so prepared it never should have entered into this contract since there was no obligation on the part of the State to consent to the delegation of performance of any part of this contract.
The particular vice of claimant’s argument in regard to how much of the contract involved specialty items is that under that argument, a determination of what is a specialty item would always depend not upon the contract but upon the nature of the bidder to whom the contract was awarded. This would be a method of circumventing the very purpose of the statutes and regulations upon which the restrictions upon delegation of performance contained in the contract are based.
*479 It follows that the claimant is not entitled to recover any sum of money on account of the State’s refusal to permit the subcontracting of 15 items covering the paving of the roadway, installation of curbs and sidewalks and other work incidental thereto.
The second item of the claim relates to payment for reinforcing rods and hoops used in cast-in-place piles. The claim sought recovery for 40,000 pounds at the unit bid price of 15 cents per pound and on the trial this claim was amended to 43,875 pounds at 15 cents per pound at the agreed total of $6,581.
One of the items in the proposal was item 850 which covered an estimated 20,220 linear feet of cast-in-place concrete piles. Item 850 under the “ Public Works Specifications ” of January 7, 1947 which constitutes a part of this contract, is headed “ Oast-in-Place Concrete Piles ” and sets forth general specifications one of which is paragraph “ d” headed “ Reinforcement ’ ’ stating that piles shall be reinforced as shown on the plans. Paragraph “k” provides for measurement and payment and contains a specified statement that bars reinforcement required by the plans will be paid for under its appropriate item. The appropriate item is No. 28 and under paragraph “ g” there is a provision that “ Payment will be made for the number of pounds of bar reinforcement incorporated in the work as shown on the plans and in accordance with the specifications, exclusive of chairs, fastenings and supports.”
The only other reference to these cast-in-place concrete piles is found on sheet No. 4 of the contract plans. At the bottom of this sheet there is a longitudinal cross section of a pile showing six three-quarter inch dowels extending two feet and three inches above the concrete and extending to a depth 10 feet below the top of the concrete. At a point three feet below the top of the concrete a line was drawn leading to two written legends at the left of the drawing. The first of these legends reads ‘ ‘ Payment for 6-%" dowels above this plane will be made as Bar Reinforcement for structures, below this plane payment is included in item 850.” The second written legend immediately below reads, * ‘ For Piles with metal shell thickness greater than 0.120 inch provide dowels above this plane without hoops.” Ten feet below the top of the concrete there is another line drawn leading to a third legend to the left of the drawing which reads, “ For Piles with metal shell thickness 0.120 inch or less extend dowels to this plane and provide hoops to top of pile.” To the right of this drawing is another note which reads, “ Concrete Pile reinforcement Not Shown on Bar List.” *480 To the right and below that note is another drawing which is a cross section of the pile and shows the placing of the shell, dowels and hoops.
After entering into the .contract the claimant made a specific request for permission to use cast-in-place concrete piles with a metal shell thickness less than 0.120 inch and this permission was granted. The claimant then proceeded with the installation of these cast-in-place concrete piles utilizing the reinforcement required by the drawing on sheet No. 4 of the contract plans.
As the work progressed payment was made to the contractor on estimates pursuant to article 7 of the contract. Those estimates included for payment from time to time, the unit bid price for the reinforcement used in the cast-in-place concrete piles in accordance with the drawing on sheet 4 of the contract plans.
On the final estimate however, the State excluded from payment at the unit bid price the bars extending from a point three* feet below the top of the concrete to 10 feet below the top of the concrete and for hoops used to tie those bars together from the top of the concrete to a point 10 feet below the top of the concrete. Payment for the bars or dowels from a point three feet below the top of the concrete to a point two feet and three inches above the top of the concrete was not excluded.
The claimant maintains that the use of the reinforcement was proper under the contract since item 850 of the public works specifications requires the contractor to use reinforcement as shown on the plans and item 850 provides for payment therefor under item 28 of the public works specification and that nothing in the contract negates such payment since there is only an affirmative statement that such payment will be made for all reinforcement used.
The State on the other hand contends that the drawing and notations contained on sheet 4 of contract plans were intended to give to the contractor an option to use either a shell thickness greater than 0.120 inch in which event the only reinforcement required extended upward from three feet below the top .of the concrete to two feet and three inches above the top of the concrete without any hoops, or shell thickness of 0.120 inch or less in which event the reinforcement as shown on the plan and as actually installed by this claimant was required. The purpose of this was to permit bids on the basis of either type pile with the unit force including everything except the dowels above three-foot plane. The State claims that this was the clear and unambiguous intent by reason of the specific provision for pavraent for the bars extending above the three- *481 foot plane as bar reinforcement for structures since if this were not included such payment would have been required under the provisions of item 850. Thus the State is contending that a statement that payment will be made for a part of the reinforcement which was labelled dowels necessarily and clearly stated that there would be no payment for reinforcement .under the provisions of item 850.
The State prepared this contract on its own forms and it was incumbent upon the State to express its meaning with certainty. It is responsible for any uncertainty created by the language which it proposed. (Heating Maintenance Corp. v. State of New York, 206 Misc. 605.) At the very least the notations appearing upon sheet No. 4 of the contract plans created an ambiguity. It is not clear from the language used that what was intended was the granting of an option to the contractor and urging that a redundant statement of payment necessarily negative the provisions for payment contained in item 850 of the public works specifications places an unreasonable burden of construction upon any person reading the contract and plans. There was no such difference in cost between cast-in-place piles with the lesser shell thickness and reinforcement and east-in-place piles with the thicker shells and no reinforcement as to aid the State’s contention as to the meaning of the notations. This court fails to see how the State can eliminate payment as provided for in its own specifications by two affirmative statements as to how payment will be made, one of which refers specifically to the very method of payment which the State claims it intended to eliminate.
The court finds that claimant is entitled to recover for the installation of 43,875 pounds of bar reinforcement for structures at the unit bid price of 15 cents per pound in the total sum of $6,581.
There remains the question of the amount of interest to which this claimant is entitled. The public works specifications of January 2, 1947 which constitute a part of this contract contain two provisions determinative of the interest to which a contractor with the State is entitled. The first of these provides:
“ The acceptance by the Contractor, or by anyone claiming by or through him, of the final payment shall constitute and operate as a release to the State from any and all claims of any liability to the Contractor for anything theretofore done or furnished for or relating to or arising out of the work done hereunder, and for any prior act, neglect, or default on the part of the State or any of its officers, agents, or employees, *482 excepting only a claim against the State for the amounts deducted or retained in accordance with the terms and provisions of the contract,' and excepting a claim for delay or one arising from ‘ Disputed Work as set forth in a preceding paragraph and filed in a signed statement form with the Superintendent.
“ The Contractor is warned that the execution by him of a release in connection with the acceptance of the final payment, containing language purporting to reserve claims other than those herein specifically excepted, or for claims for amounts deducted by the Comptroller, shall not be effective to reserve such claims, notwithstanding anything stated to the contrary, orally or in writing by any officer, agent or employee of the State.
“ Should the Contractor refuse to accept the final payment as tendered by the Comptroller, it shall constitute a waiver of any right to interest thereon.”
The other pertinent provision is headed “ Disputed Work ” and provides: “If the Contractor is of the opinion that any work ordered to be done as contract work by the Engineer is extra work, and not contract work, or that any order of the Engineer violates the provisions of the contract, the Contractor shall promptly notify the Superintendent in writing of his contentions with respect thereto and the Superintendent shall make a finding thereon; the work shall, in the meantime, be progressed by the Contractor as required and ordered. During the progress of such disputed work the Contractor and Engineer shall keep daily records of all labor, material and equipment used in connection with such work and the cost thereof.”
The contract provisions making an acceptance of final payment a release of all further claims except claims for retained percentages and claims arising under the “Disputed Work ” provision arid presented in accordance therewith, has been recognized and sustained. (Buffalo Elec. Co. v. State, 4 Misc 2d 172.) The pattern thus emerges that the parties agree that where disputes are not handled in accordance with the provisions of the contract by prompt notification of the superintendent in writing, then interest is suspended upon the liquidated amount tendered by the comptroller. This is a reasonable provision of the -contract aimed at settlement of disputes without resort to the courts by presentation to the Superintendent of Public Works' The failure of a claimant to comply with the contract provisions but then seeking to preserve his right to litigate the dispute without submission to the Superintendent of Public Works involves his assumption of a penalty by loss of interest on the liquidated amount.
*483 Such a provision is not contrary to public policy and is in no way invalid or improper. It is a matter of agreement between the parties and the parties are free to provide for a suspension of interest. Section 480 of the Civil Practice Act requires that in every action where a sum of money is awarded by a verdict, report or decision upon breach of performance of a contract ‘ ‘ interest shall be recovered upon the principal sum whether theretofore liquidated or unliquidated and shall be added to and be a part of the total sum awarded.” This does not constitute such a statement of public policy that an agreement by the parties limiting or suspending the right to interest may not be given full effect.
Application of the contract provisions to the facts here, requires an award of interest on the judgment heretofore recovered in the sum of $77,008.13 and the sum of $6,581, recovery of which is granted herein. In this instance the claimant did comply with the contract. This particular dispute for which recovery is granted did not arise until submission to the claimant of the final estimate. The claimant thereupon filed with the Department of Public Works a verified statement setting forth its contentions. Claimant’s contentions were rejected by the superintendent. This was not a situation covered by the “ Disputed Work ” provision since the dispute did not arise from work .ordered or any order of the engineer. The only method by which the claimant could protect its right to litigate the particular dispute was through rejection of the final payment and the penalty for failure to accept final payment was not applicable since that penalty is intended to implement the procedure for settlement of disputes provided in the contract. Since no such procedure was here provided the contractor could not be subject to the penalty in protecting his right to litigate the dispute.
The time from which interest should be computed has not been the subject of any evidence and claimant has asserted that interest should run from the date of acceptance of the work by the State. The work was accepted on March 9, 1953. The contract provides that upon completion and final acceptance and the submission to the contractor of a final estimate, the contractor must submit a written verified statement of any and all alleged claims in any way connected with or arising out of the contract. He must also submit a verified statement regarding any claim arising under the “ Disputed Work ’’ provision quoted above but this requirement in no way relieves the contractor of complying with the requirements of the “ Disputed Work ” provision. Clearly the contract does not *484 contemplate preparation and submission of the final estimate and payment thereon simultaneously with acceptance of the work. Under the contract the obligation of the State to make the final payment does not arise until preparation and submission of the final estimate. There may be a breach of contract by the State in failing to prepare and submit a final estimate within a reasonable time but to permit recovery such breach must be alleged and proved.
Here the final estimate was apparently forwarded to the claimant on June 8, 1953. The claimant’s verified statement of alleged claims was not submitted to the Department of Public Works until October 15, 1953. Payment of the liquidated amount after rejection of claimant’s contentions was not offered by mailing of a check until December 17,1953. Claimant has not specified that there was any unreasonable delay in the preparation and submission of the final estimate. In Rusciano & Son v. State of New York (201 Misc. 690, affd. 281 App. Div. 733), the problem of the time of computation was reviewed and the court concluded that in the absence of a concession by claimant or proof requiring a contrary holding, interest has generally been allowed from the date of the acceptance of the work. In that case while acceptance of the work was on June 20, 1949, claimant sought recovery of interest only from August 20, 1949 and that recovery was granted in the absence of any proof as to a reasonable time for the preparation and submission of the final estimate.
Under the circumstances of this ease the court finds that the obligation on the part of the State to pay a balance due under the contract did not arise until June 8, 1953 when the final estimate had been prepared and submitted to the claimant. In the absence of any allegation and proof in support thereof that there was an unreasonable delay in the preparation and submission of the final estimate, interest must be computed from June 8, 1953.
Claimant is entitled to recover the sum of $6,581 with interest at the rate of 4% from June 8, 1953 to the date of entry of judgment, such sum to be computed by the clerk upon entry of judgment. Claimant is also entitled to recover interest on $77,008.13 at the rate of 4% from June 8, 1953 to the date of the entry of judgment for that amount in this court on February 4,1954 in the amount of $2,119.41 with interest on that sum from February 4, 1954 at the rate of 4% to be computed by the clerk upon entry of judgment.
Let judgment be entered