Bbeuaed Eyast, P. J.
Confronted with a release clause in claimant’s contract with the State of New York, in essence no different from that examined, considered and upheld in several instances both by the Court of Appeals and by other courts, and applying what we believed to be decisive law to the fact that claimant had signed the contract with full knowledge that it contained such a clause; to the further fact that claimant had accepted final payment for the work done by it pursuant to its contract, we dismissed claimant’s suit. (Buffalo Elec. Co. v. State of New York, 4 Misc 2d 172 [1956].) In doing so, we were aware, too, of the fact that claimant’s president by an indorsement on the check intended to, and believed that he did, reserve for claimant its right to proceed to recover for additional costs for work allegedly performed by it. Such additional costs, if proved, were incurred for something “ done or furnished for or relating to the work,” or for some “act of omission ” of the State or its agents, to borrow the phraseology of the contract document. That fact cannot be controverted.
There were other facts before us; clauses -of the contract, letters from the State Architect to the claimant, letters from the claimant to the State Architect. These are quoted in *529 pertinent part in our opinion reported as above cited. Our dismissal was effected by the granting of the Attorney-General’s motion that, under the contract, the acceptance of the final payment by the claimant operated as a release of the claim it now asserts which is for damages based upon delays and interferences and for extra work. That motion was not one for summary judgment as was the motion in Fredburn Constr. Corp. v. City of New York (280 N. Y. 402 [1939]), but was granted after the development upon a trial of the facts herein-above reviewed. Indeed, this court, recognizing the doctrine of the Fredbum case, not only permitted claimant full opportunity to develop the facts during an extended trial but, a long time after its completion, permitted a reopening and received in evidence many documents then presented.
Upon appeal the case was remitted. (Buffalo Elec. Co. v. State of New York, 9 A D 2d 372.) The direction to this court was (p. 374): “ to decide the underlying question of fact as to whether both parties intended and understood that the check was to be a 1 last payment ’ in full of all claims.”
The direction to us to make appropriate findings gave the parties to the suit the option of resting upon the proof already in the record, or of presenting additional proof. No additional proof has been offered by either party. Our search for intent must be made in the field already explored in our previous opinion. (See Mace v. State of New York, 12 A D 2d 702.)
At the outset we note that, although there is a comment in the Per Curiam opinion of the Fourth Department to the effect that, absent a consideration, a unilateral mistake by the one who releases may vitiate a release, the direction to us is that we should resolve the question of the intent and understanding of both parties. Consideration there was. It was mutually given in the original contract of which the release clause was a part. Claimant’s president could not alter that contract by unilateral action. Granted that it was his intent to do so, who expressed the intent of the other party—the State of New York? Shall we say that the State Architect did it? His letters, in essential part, are quoted in our previous opinion. He consistently held to a position in strict adherence to the terms of the contract. He had, in fact, no authority to do otherwise. He had, in law, no authority to make a new contract for the State of New York unless the decisions in Cauldwell-Wingate Co. v. City of New York (269 N. Y. 539 [1935]) and Nicholas v. City of New York (293 N. Y. 704 [1944]) and Oakhill Contr. Co. v. City of New York (262 App. Div. 530 [1941]) are all to be overruled and set aside. In the words of the last- *530 cited authority (p. 533): “ What was said in such transactions was overridden by what was done in accepting payment.” (Cf. Raleigh Associates v. Henry, 302 N. Y. 467, 473; Wilson Sullivan Co. v. International Paper Makers Realty Corp., 307 N. Y. 20, 25 [1954].)
The heart of the matter lies in the much earlier case of MacArthur Bros. Co. v. City of New York (177 App. Div. 725 [1917], affd. 224 N. Y. 629). That was an appeal from a directed verdict for the defendant. For ready reference we quote from the opinion as follows:
At the time that this final payment was accepted by the plaintiffs the plaintiffs executed a general release to the city. In that general release, however, was a provision which assumed to reserve to the plaintiffs the right to make claim against the city for the matters included in this action. The contention of the plaintiffs is that by reason of the fact that this reservation was made in this general release which was filed at the time of the acceptance of the last payment, that such acceptance cannot be deemed to be in full or cannot operate as a release of the claims here sought to be enforced. In support of this contention Gearty v. Mayor, etc. (171 N. Y. 61, 66), is cited. In that ease a general release was executed which was required by the comptroller in order to obtain the moneys actually due and payable by the terms of the contract, and it was held that the contractor was not bound by that release. But in that ease there was no provision in the contract between the city and the contractor as to what should be the effect of the acceptance of that final payment or that such acceptance should in any way operate to release all other claims. This provision in the contract in the ease at bar clearly distinguishes this case from the ease cited. The comptroller of the city had no power to modify this contract or to waive any of its provisions. The release was not called for by the contract. His acceptance of a general release with this reservation could in no way operate to change the effect which would otherwise follow from the acceptance of this final payment. In Allen v. City of Oneida (210 N. Y. 496, 501) it was provided that the payment of the final amount due should release the city from any and all claims under the contract. It was there held that the plaintiffs, having accepted this payment, could not thereafter repudiate the covenants entered into by them and recover for the alleged quantity of work in excess of the amount shown by the final estimate. This authority would seem to be conclusive against the plaintiffs in this ease unless they be saved by the reservation contained in the release. That such reservation cannot have that effect must follow from the lack of power in the comptroller to modify or in any way change the contract between the plaintiffs and the city. We are of opinion, therefore, that the defendant’s objection, based upon the effect of the acceptance of this final payment, must prevail, and this conclusion would lead to an affirmance of this judgment.
The clause in the MacArthur contract is set out in the opinion in that case (p. 726). The clause in the Buffalo Elec, contract (quoted in 4 Mise 2d 172, 174) is no less ironclad. The fact is that in each instance the clause was part and parcel of the contract. ;
*531 Not to burden this opinion, but for purposes of comparison, we append copies of the release clause in the Fredburn, Gauldwell-Wingate, Nicholas and Oakhill contracts as found in the record of those cases (see appendix).
In the remittitur we are reminded of our discourse in Rusciano & Son Corp. v. State of New York (201 Misc. 690 [1952], affd. 281 App. Div. 733) on the subject of the practice in this court of a claimant moving for, and the Attorney-General consenting to, an order of severance, and judgment thereon, for the amount admittedly due for work performed for the State. This is no doubt circumlocution within the definition thereof long ago demonstrated by that keen observer of the legal process, Charles Dickens. But can it be said that the Attorney-General has expressed the intent of the State of New York to reform the contract, to relieve claimant from the force of its stipulated terms? We think not. When the Attorney-General assents to an order of severance he does not void the original contract. He sustains it. When a claimant, in that situation, collects the sum awarded him he does so, and the State Comptroller pays him, not under his original contract but under a new contract. The new contract is the judgment of this court.
All of the severance orders, all of the judgments thereon, granted by this court in the past 10 years, and there have been many, added together, could not make a new meeting of the minds between the State of New York and contractor A, B or C. All of his consents to the severance procedure by the Attorney-General of the State, through his authorized trial deputies, cannot be construed as an intent to vitiate the plain language of a contract duly executed and approved by other officers of the State under their constitutional and statutory authority. The Attorney-General asserts no such power. It cannot be implied.
Unilaterally, the president of claimant company could not avoid the stipulation of his binding agreement, although we find as a fact that he intended to do so. (See Buffalo Elec. Co. v. State of New York, 4 Misc 2d 172, 177.)
We find other facts. We find that C. J. White, the State Architect, did not intend to waive the release clause of the claimant’s contract; he did not consent to such waiver; he did not assent to the claimant’s reservation as expressed in the indorsement made by claimant’s president upon the check; he did not see the indorsement before claimant collected the proceeds of the check through claimant’s bank, if, indeed, he has ever seen it.
*532 We find as a fact that, although there was no notation on the face of the check indicating that it was intended to he in full of all claims, the claimant’s president, when he accepted payment of the proceeds thereof, knew that it represented final payment of the contract amount. Without repeating them by verbatim quotation herein, we find that the pertinent clauses relating to final payment, acceptance and release were recited in claimants’s contract which is Exhibit 3 herein; that the provisions of Public Works’ specifications of January 2, 1951 were incorporated into claimant’s contract. We find, as a fact, that claimant by accepting the final payment did release any claim it had for additional costs of performance due to alleged delays, interferences or refusal of site or to extra work. Upon such findings of fact the claim must be dismissed.
• APPENDIX TO OPINION
1. The release clause in the Fredburn contract was identical with that in the Cauldwell-Wingate contract except that the first was designated article LII and the second article LIII. The text in each instance was as follows: “ ART. LIII. The acceptance by the Contractor of the final payment of aforesaid shall be and shall operate as a release to the President, and the City, and each official and employee, representative and agent thereof from all claim and liability to the Contractor for anything done or furnished for, or relating to the work, or for any act or omission of the President, the City or any person relating to or affecting the work, except only the claim against the City for the remedy, if any thereby, of the amounts kept or retained as provided in this contract and for interest, if any, on the final payment.”
2. The clause in the Nicholas contract read as follows: “ (GG) The acceptance by the Contractor or by any person claiming under the Contractor of the final payment, or any part thereof, as certified by the commission in the final certificate of completion and acceptance of the work, shall operate as and shall be a release to the City from all claims of and liability to the Contractor and the Contractor’s representatives and assignments for anything done, furnished for or relating to the work or for any negligence of The City or of any persons relating to or affecting the work, except such sums as may be retained under the maintenance provisions of the contract.”
3. The clause in the OalMll contract read as follows: “Section 37. The acceptance by the Contractor or his regular representatives or assignments of the final payment aforesaid or any part thereof, shall be and shall ■ operate as a release to the City from all claims and liability to the Contractor for anything theretofore done or furnished for, or relating to the work or for any prior act, negligence, fraud or defraud of the City of any person relating to or affecting the work, except only the claim against the City for the remainder, if any thereby, of the amounts kept, or to be retained by this contract.”