Sidney Squire, J.
The defendant, State of New York, moves, pursuant to subdivision 6 of rule 107 of the Buies of Civil Practice, to dismiss the claim upon the ground that said claim has been released.
To obviate any question as to the timeliness of the motion, the lawyers have executed a formal stipulation agreeing that the motion may be made now because the parties desire that the issue of release “be disposed of on motion in advance of any trial on the merits On the oral argument and in the respective briefs, counsel have confirmed the foregoing.
On July 14,1950, after appropriate bidding, the parties hereto entered into a contract for the construction of a portion of Cross Bronx Expressway (High Bridge Interchange) in the principal amount of $3,163,476.
There followed three supplemental agreements in writing between the parties of which the third, ostensibly dated June 15, 1953, is germane. On October 7, 1953, the State issued its check No. 0-979628 for $126,073.46 as the final payment to claimant which indorsed the check and deposited it. (Exhibit “ A ” *859 annexed to moving papers shows New York Clearing House stamp indorsement dated Oct. 8,1953 on the back of said check.)
Subsequently, claimant filed the instant claim (verified on April 21, 1955) for $36,264.48 with interest.
In support of its motion, movant relies on the standard New York State final payment release provision contained in the contract, to wit:
" Acceptance of Final Payment. The acceptance by the Contractor, or by anyone claiming by or through him, of the final payment shall constitute and operate as a release to the State from any and all claims of any liability to the Contractor for anything theretofore done or furnished for or relating to or arising out of the work done hereunder, and for any prior act, neglect, or default on the part of the State or any of its officers, agents, or employees * * *.
“ The Contractor is warned that the execution by him of a release in connection with the acceptance of the final payment, containing language purporting to reserve claims other than those herein specifically excepted, or for claims for amounts deducted by the Comptroller, shall not be effective to reserve such claims, notwithstanding anything stated to the contrary, orally or in writing by any officer, agent or employee of the State.”
(Both sides agree that the omitted portion in the quoted first paragraph above is inapplicable herein.)
Accordingly, the State maintains that the indorsement and deposit of the final payment check for $126,073.46 constitutes a release of the claim at bar, relying on Cauldwell-Wingate Co. v. City of New York (269 N. Y. 539); Oakhill Contr. Co. v. City of New York (262 App. Div. 530 [1st Dept.]) and Buffalo Elect. Co. v. State of New York (4 Misc 2d 172 [Nov., 1956, Bernard Ryan, P. J.]).
The claimant, in opposition, contends that the release provision of the contract of July 14, 1950 and the deposit of the check of October 7,1953 are inoperative due to the intent of the language in the last typewritten paragraph in said third supplemental agreement between the parties.
Said document ofttimes referred to as a third supplemental agreement, is more accurately denominated as “ Agreement No. 3 & Final Account ”. In that precise terminology, it appears on the signature page of said Exhibit (“Form C-47-A, Last Sheet ”) and on every one of at least 26 pages of schedules on Form 0-165.
Said 26 pages of the State’s form contain hundreds and hundreds of numbered items in great detail, specifying with exacti *860 tude (for a total of over three million dollars) every item, each unit of measurement, unit price, quantities and dollar amounts of the hundreds of items comprising the initial contract “ as modified by previous agreements ”, subsequent increases and decreases and “ original contract as modified by agreement to date. ’ ’.
Moreover, although said voluminous document bears the date of June 15, 1953 on the first page and on every Schedule page, actually the page of signatures (Sheet No. 13) shows numerous subsequent dates. Obviously, signatures were affixed thereto by authorized representatives of the State as follows: on September 1, 1953 for the State Department of Public Works, Division of Construction, on September 14,1953 for the Director of the Budget and on September 21, 1953 for the State Comptroller, in addition to the undated signatures of an officer of claimant, a partner of the consulting engineer’s firm and by the district engineer in charge, himself.
The material typewritten verbal language in said “ Agreement No. 3 & Final Account ” on said signature page is:
" Witnesseth:
“ The party of the first part, Poirier & McLane Corporation hereby agrees to furnish all the quantities of materials and labor hereinafter described, at the prices hereinafter mentioned, in accordance with the terms of the original contract, the requirements contained in this agreement., and the orders of the State Department of Public Works.
“ And in consideration of not being required to furnish the items deducted by this agreement, which were found to be unnecessary for the proper completion of the work, hereby consents to the deduction of said items.
“ The party of the second part, The State of New York, represented by the State Department of Public Works, hereby agrees to pay Poirier & McLane Corporation, party of the first part, the prices mentioned in this agreement for the quantities of materials and labor, actually ordered and performed in the same manner as is provided for the monthly payments in the Contract hereinbefore referred to.
“ It is understood that this agreement is without prejudice to the claim of the Contractor’s, Poirier & McLane Corporation, for additional payments under items 5, 30 and 121AS for excavation, miscellaneous metals and topsoil, which claim as set forth in the Contractor’s letter to the engineers for the State dated December 28,1951, April 11, 1952, April 18, 1952, April 2, 1953 and July 8, 1953, and which claim in the amount of approxi *861 mately $40,000.00 is expressly reserved herein by the Contractor. ’ ’
It is undisputed that the claim sub judice is predicated on the item set forth in the last-quoted paragraph. The correspondence annexed to Mr. Field’s opposing affidavit demonstrates what occurred here, also evidencing the time consumed between June and September of 1953.
I find and conclude that the State drew its “ final ” check of $126,073.46 in accordance with the facts and figures contained in ‘ ‘ Agreement No. 3 & Final Account ’ ’.. Other exhibits ‘ ‘ dovetail ”, respective of accommodating dates.
“Estimate No. 26 & Final” (dated June 15, 1953) stating “ Amount of Contract $3,133,005.82 as Modified by Agreement No. 3 Final” (sic) and showing the details aggregating said total amount for the “ road ” and six “ structures ”, as well as how the said balance of $126,073.46 was arrived at, is congruent with the facts and figures in “Agreement No. 3 & Final Account”. Although said “Estimate No. 26 & Final” bears the date of June 15, 1953 on its first page, the affidavit on the reverse side was sworn to on July 31, 1953, and “Examined and found correct” on August 18, 1953 and “Approved at $126,073.46 ” on September 24, 1953 and September 28, 1953, a few days after deputy comptroller J. J. Kelly’s signature of September 21, 1953 on “ Agreement No. 3 & Final Account ”.
The “ quid pro quo ” apparently was the claimant’s agreement to accept a net decrease of $16,276.33 for the State’s acquiescence in permitting the claimant to reserve its disputed claim of about $40,000.
No one was misled thereby, certainly not the State. The accord attained in said “ Agreement No. 3 & Final Account ” should not now be decimated by resort to an inapplicable line of cases relating to a contractor’s unilateral act or the invalid pseudo concurrence of an unauthorized State employee.
Here, there was a formal written agreement executed bilaterally by officials of high echelons after negotiations of months. The State does not and cannot repudiate the signatories of its district engineer himself or those acting with authority for the State Department of Public Works and its consulting engineers, the State Comptroller and State Director of the Budget,' nor assail the authority of claimant’s vice-president.
More public officials signed this formal writing than were signatories to.the initial contract.
As the State forcefully contends, the language in the last paragraph might have been more felicitous. Use of the words “ and deposit of final check ” might well have obviated the issue *862 on this motion. However, that is hindsight. The language actually employéd is construed as intending such result by all parties thereto, based on the factual posture at bar and legal experience in this type of case.
The motion is denied. Order signed.