Sidney Squire, J.
This claim originally consisting of three causes of action, demanded $146,151.65 and interest.
Pursuant to an order granting severance on May 31, 1955, after trial thereof, a decision and judgment were entered in claimant’s favor for $141,967.41, the principal amount demanded in the first cause of action. Said decision and judgment specifically reserved for this latter trial the issues of the second and third causes of action, as well as whether claimant was entitled to interest on said $141,967.41.
The claim arises out of contract No. 2571 between the claimant and the State of New York, acting through its Department of Public Works, for the construction of the Infirmary Building 95A at the Central Islip State Hospital at Central Islip, Suffolk County, New York, in accordance with specifications No. 17032, for the low bid sum of $2,616,300:
The time for the completion of the work was extended by the State. The claimant performed the work required by the contract and the same was accepted by the defendant on March 29, 1955.
The second cause of action seeks $2,841.30 which the defendant had deducted pursuant to a forcé order dated February 3, 1955 in said sum. Footnote “A” (p. 483) contains the applicable portions of the written contract between the parties relating to “ Temporary Heat”, ‘ ‘ Running Test” and “Cleaning System ”. The amount of said force order represents the alleged cost of certain' heating purportedly supplied by or for the State while prescribed running tests were being made.
The heating work in the said Infirmary Building was not an obligation of the claimant. It was the basis of a separate contract known as contract No. 2572, dated November 30, 1951, between the State and Dierks Heating Co., Inc.
Throughout the performance of claimant’s contract the claimant supplied temporary heat by Salamanders using propane gas. This was done, as testified, to make certain that the temperature did not go below the freezing point while work was in progress.
The State maintained that it furnished the steam required for temporary heat for the period of November 15, 1954 to January 15, 1955. This was not proven nor did the State prove the reasonable value for any such steam which it may have furnished for a portion of that time while tests were being made.
These tests were made with respect to the Dierks heating job. The State contends that the claimant benefited therefrom because the latter did not have to furnish its own temporary heat while those tests were being made.
*481 State’s Exhibit “ D ” is a letter dated December 23, 1954 from the State Architect to claimant. It sets forth “ our (the State’s) estimate for the amount of steam which will be used by November 15th, 1954 and January 15th, 1955 ” aggregating $2,841.30. This, as stated, was an “ estimate ” in futuro. The State did not prove the performance of said estimate.
The reply to State’s Exhibit “D” is State’s Exhibit “ E ”, a letter dated January 4, 1955, from claimant to the State Architect. It sets forth that the “ tests were run for a seven day period of 24 hours * * * between November 17th and December 3rd ”.
Exhibit “ E ” also notifies the defendant that during said testing period “ temperatures close to 100 degrees ” were found in several areas. Moreover, the letter continues that such “ excessive temperature caused ‘Kiln’ drying of partitions,” etc., instead of the slow average temperatures required in a new building and that “ This excessive heat caused shrinkage which would not have occurred with slow drying”. We are not impressed with the explanation in State’s Exhibit “ Gr ”, the letter dated January 14, 1955 from the State Architect to the claimant.
There is no provision in the contract between the parties for a credit such as the State deducted for such heating. Claimant’s resultant benefit may have been the reasonable value of the quantity of propane gas it would have used during said “ testing period ”. No such proof is in the record.
Accordingly, the amount of said force order was an erroneous deduction. Claimant is entitled to the $2,841.30 demanded in the second cause of action.
The third cause of action requests $1,342.94 for temporary lighting supplied by the claimant during the alleged regular working hours from 8:00 a.m. to 4:30 p.m. The contract provided that the normal working hours for the performance thereof would be from 8:00 a.m. to 3:30 p.m. Claimant seeks compensation for temporary lighting for one hour after 3:30 p.m., i.e., until 4:30 p.m.
The contract in part provided as follows: “ Temporary lighting will not be provided after regular working hours. If it is necessary for any contractor or his employees to be in the building after regular working hours that [sic] contractor shall provide illumination as required by means of flashlight, electric lantern, or other device not requiring use of electricity from temporary electric service facilities.”
*482 Accordingly, claimant cannot collect from the State for its use of electricity after the regular working hours which terminated at 3:30 p.m. The third cause of action is dismissed.
Claimant is also entitled to that portion of its first cause of action which sought interest on $141,967.41 for which it heretofore obtained judgment herein. The question of interest had been reserved to ascertain whether claimant would obtain any recovery on this trial.
In Poirier & McLane Corp. v. State of New York (13 Misc 2d 858), we referred to the legal proposition involved, i.e., that a contractor’s indorsement and deposit of the final payment check (here $141,967.41) would have constituted a release of any other claim against the State arising out of the contract. If claimant were not entitled to recovery on its second or third cause of action herein, it should have accepted and deposited said' final payment check and could not recover any interest thereon. We determine herein that claimant should have recovery on its second cause of action and that claimant acted properly in returning the check. Consequently, the claimant is awarded interest on said principal amount from April 6, 1955 to May 31, 1955, amounting to $865.71.
The claim herein was filed in the office of the clerk of this court on May 12,1955 and a copy thereof served on the Attorney-General on the same day. Said claim has not been assigned or submitted to any other tribunal for audit or determination. The case was finally submitted for decision on August 1, 1958. Both sides waived the submission of proposed decisions containing proposed findings of fact and proposed conclusions of law.
At the close of the claimant’s proof and again at the termination of the entire trial, decisions were reserved on the State’s several motions to dismiss the claim. Said motions are now denied except that the third cause of action is dismissed. The implied motion of claimant for judgment is granted as hereinafter set forth.
Judgment is to be entered accordingly (Civ. Prac. Act, § 440) in favor of the claimant, Lasker-Goldman Corporation, against the defendant, the State of New York, for $3,707.01 (consisting of $865.71, the interest on $141,967.41 demanded in the first cause of action, and $2,841.30, the amount found due on the second cause of action) with interest (a) on said $2,841.30 from April 6, 1955 to the date of entry of judgment herein and (b) on said $865.71 from May 31, 1955 to the date of entry of judgment herein.
Let judgment be entered accordingly.
*483 FOOTNOTE “A” SECTION 36A — TEMPORARY HEAT ARTICLE 3625 —GENERAL 1. After the building is enclosed, temporary heat shall be provided by the Contractor for Construction Work when so directed by the State Architect between November 15 and April 15. The building shall be considered enclosed when the exterior walls and the roofs are completed sufficiently to exclude the elements, except for windows, doors, ventilators, and similar openings which shall be temporarily closed as specified in Article 3604. Sufficient heat shall be provided to maintain proper temperatures as conditions may warrant. The Contractor shall furnish, place and maintain thermometers thruout the building and be responsible for the degree of heat required. 190. Running Test.— When directed, any section of the work, after it has been completed and otherwise satisfactorily tested, shall be put in actual operation by the Contractor and operated by him for a period of two days of 24 hours each, during which time any defects which may appear shall be remedied and any adjustments which may be necessary shall be made. During this period the fuel required for operation shall be provided as follows: (a) If steam is available from a central heating plant the steam will be furnished by the State without charge. (b) If heat is provided by a boiler or boilers furnished and installed under this contract the Contractor shall furnish all fuel required for producing the necessary steam or hot water. (c) If steam is to be furnished from a central heating plant and the steam service is not available prior to the completion of all of the other work of the contract the steam test will be omitted. 191. During the time of the tests, the Contractor shall repack all valves, make all adjustments and otherwise put the apparatus in perfect condition for operation, and shall instruct the State’s representative in the use and management of the apparatus. All joints shall be made absolutely tight under test. Caulking of pipe joints or makeshift methods of repairing leaks shall not be allowed. Piping, which is not tight under test, shall be taken down and re-assembled. 192. Cleaning System — In addition to the pressure, working and running tests and the blowing out of the pipes, herein specified, the system shall be given additional cleaning by maintaining steam on the system (if steam is available from Main Power House before final acceptance) for a period of three days of 24 hours each if the total radiation is not more than 5,000 sq. ft. and for a period of seven days of 24 hours each if the total radiation is more than 5,000 sq. ft., during which period all water of condensation shall be wasted.