Sidney Squire, J.
As we sign the proposed decision submitted by the defendant, awarding the claimants judgment for $742,979.10 with interest, the following should be noted.
The claim as initially filed contained 20 causes of action demanding $4,693,139.32 with interest. It arose out of Contract No. FASWC 54-2 and FAST 54-28, dated June 29,1954,- between the parties hereto, for the construction of a portion of the New York State Thruway, Southern Westchester connection, subdivision No. 11 in Westchester County. The claimants as joint *786 venturers had been awarded the contract with a low bid of $15,416,892.87.
The State had retained the firm of Edwards, Kelsey and Beck, the engineering firm which had designed this stretch of the Thruway, to supervise the construction. Pursuant to the provisions of the contract, performance was to be completed on December 1, 1955. Numerous extensions for completion were granted until January 30, 1957. Claimants’ performance was finally accepted by the defendant on March 11, 1957. This litigation ensued.
On October 4, 1957 on motion of the claimants, an order was signed herein by our colleague, Judge Alexander Del Gtorno, severing the claim as to that portion of the first cause of action which related to moneys concededly due the claimants under the final estimate. After the trial of the severed cause, Judge Del G-iorno rendered a decision awarding claimants $892,122.24 as concededly due them, reserving the question of interest on that amount for this later trial, as well as the remaining 19 causes of action. Judgment in the foregoing principal amount was entered on December 13, 1957 in favor of claimant against the State without prejudice to the prosecution of the remainder of the claim.
The residual issues involved $3,801,017.08 with interest plus the interest question on the $892,122.24 (the partial judgment granted).
When it became apparent that we would preside at the trial of such issues, trial counsel for the respective parties were invited to confer with the court to discuss, consider and agree upon trial procedure, all in an endeavor to attain an equable trial and prompt disposition of this prolific, lengthy and complicated litigation.
All counsel most willingly conferred with the court before and throughout the trial which consumed 23 trial days. This does not really set forth the actual amount of time consumed by counsel and the court because there were so many conferences held and accords obtained during the earlier hours of the mornings before the opening of court, throughout numerous so-called ‘6 lunch hours ’ ’ and after the end of court days into the evenings and nights,
Initially, counsel were informed that there would be no compulsion that such conferences be held. This was stated despite our own opinion of the inherent power of the court especially relating to a trial without a jury. All counsel expressed the desire for the conferences and demonstrated the highest degree of co-operation throughout. The best traditions of our profes *787 sion were observed and enhanced by the conduct of counsel at all times herein. The lawyers were experienced in this type of litigation, indeed deserving their reputation as experts in this field of trial work.
At the court’s suggestion, counsel were in accord that instead of having the claimants present all of their proof with respect to every one of the 19 causes of action and the remaining interest item, the case would be tried in sections. In this manner inter-allied causes of action were grouped, with counsel agreeing that when the claimants’ proof was concluded as to each cause or group, the State would proceed with its proof thereof. In this fashion a speedier determination of a separate cause of action or combined causes of action could be obtained. Counsel recognized not only their obligation to their respective clients but also their responsibility to the court, mindful of the crowded condition of our calendar in this district and the desire of other litigants to obtain a day in court.
During the conferences there was initial screening of the issues involved as to the several causes of action. Both sides were certainly well prepared. Extensive examinations before trial had been conducted on many days and the bookkeeping records of claimants had been independently audited.
These conferences resulted in streamlining the proof without limiting any portion thereof deemed of import by any party. In many instances, overburdensome, repetitive and excessive time-consuming oral testimony was obviated. Instead, schedules were prepared and copies thereof exchanged with sufficient time allowed for preparation for advantageous cross-examination. Such graphic proof is easier to see, analyze and retain. The labor of handwritten notes during the trial was thus reduced considerably. Time economy was accomplished. All benefited therefrom.
Before the trial was commenced, counsel were requested wherever possible to furnish the other side in advance with copies of sketches, maps, plans, photographs and all other proposed exhibits except for those withheld for appropriate cross-examination. We found that the views of counsel were congruent with that of the court with respect to this procedure. By such means, a tremendous amount of time was conserved in obviating examination by counsel and their respective staffs of proffered exhibits during the trial. Incidentally, in the 23 days of trial 330 claimants’ Exhibits were received in evidence and the defendant reached ‘ ‘ PPP ’ ’.
There were many interesting questions of law in this case. Facets of some had been heretofore passed upon by our appel *788 late courts. Others were novel because numerous provisions of the standard contract had been rewritten for this job.
All counsel were most helpful to the- court. Before the trial was begun, superlative briefs were submitted. During the trial supplemental briefs were also furnished. In addition, counsel delivered to our chambers Becords on Appeal with printed or typewritten memoranda which had been submitted on such appeals. These were the bases for many fruitful discussions with counsel with whom the court read law jointly in our library. Thereafter, meaningful oral arguments were spread upon the record and the court gave its rulings without reserving decision thereon.
Among the findings and conclusions herein is an award of $26,959.92 representing interest on the $892,122.24 (for which judgment had been previously rendered herein) until the date of entry of that judgment, December 13, 1957.
A few days ago, on May 1, 1959, we adverted in Lasker-Goldman Corp. v. State of New York (16 Misc 2d 479) to the question of law re: interest on the amount of a “ final payment check”, referring to our earlier opinion in Poirier & McLane Corp. v. State of New York (13 Misc 2d 858). Claimants herein having been entitled to more than the $892,122.24 offered by the State, they must be awarded interest thereon.
We cannot conclude this without expressing our commendation of all counsel in this case for their assiduous labors on behalf of their respective clients. Without the noteworthy co-operation of the lawyers, the trial days herein could easily have consumed twice the 23 days actually utilized.