Abraham N. Geller, J.
This action is to recover, on the first cause of action, the sum of $156,744 representing the alleged extra cost incurred by plaintiffs under their contract with the State of New York and, on the second cause, the sum of $159,438 representing additional expenses because of the consequential delay in performance of their contract, both of which are alleged to have resulted from restrictions placed on blasting operations at a certain location in order to protect two duct lines of defendant Consolidated Edison Company in the public highway in close proximity to the required line of excavation.
A preliminary discussion as to the issues in this case resulted in a stipulation by the parties waiving the jury trial previously demanded and consenting that the issue of liability be tried first by th court, with provision for the appointment of a Referee to assess damages, in the event the court determined that plaintiffs were entitled to recover.
On July 1, 1954 plaintiffs entered into a contract with the State of New York for the construction of a portion of the New York State Thruway, commencing at the New York City line and continuing north for about three miles, designated as the 11 Southern Westchester Connection, Subd. 11.” The contract covered hundreds of items of specifications and was for the total amount of $15,416,892.87.
The new highway was to be constructed on the easterly portion of Central Park Avenue, Yonkers, at a depth of approxi *767 mately 20 feet. There were at a certain point in the bed of that portion a storm sewer and a sanitary sewer. These sewers had to be replaced and plaintiffs were required as part of their contract to install two similar sewers in the sidewalk area along the westerly side of Central Park Avenue.
To install the new sewers plaintiffs had to excavate a trench, approximately 10 feet wide, 10 to 15 feet deep, and 800 to 850 feet long. In the bed of the street, paralleling the trench at a distance of about 5 feet, there were two high-power duets belonging to defendant, which constituted a main source of electrical supply for Westchester County.
In the absence of statutory or contractual provision, that is to say, at common law, the obligation is upon a utility company to bear the expenses for the relocation or protection of its facilities. It takes its franchise to lay its pipes in the public streets subject to the risk that, whenever a change is required for a public use, it is bound to remove or protect them at its own cost (Transit Comm. v. Long Is. R. R. Co., 253 N. Y. 345; New York City Tunnel Auth. v. Consolidated Edison Co., 295 N Y. 467).
When plaintiffs were preparing to excavate this trench, defendant warned that blasting in the vicinity of its ducts could not be permitted and that it would hold plaintiffs responsible for any damage causing an interruption in electric service. A blasting expert retained by plaintiffs reported that the plans and inspection indicated the proximity of these ducts, that “ normal blasting ” would disturb them, and suggested that the excavating be done under specified and severely limited procedures.
A controversy then arose as to whose obligation it was to bear the expense for protecting the ducts under the provisions of the applicable statute for the improvement and the terms of plaintiffs ’ contract with the State. The dispute was not adjusted and the State’s district engineer directed that plaintiffs proceed with the excavation at the recommended reduced rate. He suggested that, for the purpose of making a claim against defendant for the extra cost, plaintiffs keep an account of the expenses incurred in reducing the blasting beyond, what he characterized as, “ the maximum blasting controls prescribed in this contract.”
Plaintiffs then commenced excavating. A few days later the chief engineer of the New York State Thruway Authority, who supervised, when required, the orders of the district engineer, decided that the light charges and special blasting methods being employed to prevent damage to these ducts were covered in the specifications of plaintiffs’ contract, and that, under the statute *768 for this improvement, defendant was not obligated therefor. He testified at the trial to this effect and stated that the district engineer had at that time agreed with his “ determination.” The district engineer was not produced as a witness.
The court, of course, is not concluded by the views expressed by these representatives. Decision must rest on a proper interpretation of the statutory provisions and the contract specifications.
After completion of their contract in 1957, plaintiffs filed in the Court of Claims a claim against the State on 20 causes of action for numerous alleged extra items for a total of $4,693,-139.32. The ninth cause of action was for the sum of $156,744, the same as the instant first cause, and alleged that, in breach of the contract, the State had refused to permit blasting in accordance with the contract requirements, resulting in this large additional expense to plaintiffs in performing their work. Plaintiffs were awarded on their total claim the sum of $835,000. The ninth cause, among others, was dismissed on the merits, no specific grounds being stated in the opinion of the court (Yonkers Contr. Co. v. State of New York, 17 Misc 2d 785). Thereafter plaintiffs brought this action against Consolidated Edison Company.
In 1942 article XII-A, relating to State Thruways, was added to the Highway Law (L. 1942, ch. 914). Section 346 thereof, as amended in 1946 (L. 1946, ch. 879), provided for relocation of utility facilities in the discretion of the Superintendent of Public Works in charge of the construction on behalf of the State, in which event the expense was to be borne by the State and “ shall be deemed to be part of the cost of the thruway.”
When the New York State Thruway Authority was created by chapter 143 of the Laws of 1950, adding the Thruway Authority Act, sections 350 to 375 of the Public Authorities Law, a similar provision was contained in section 359 thereof, providing that the expense of relocation of utility facilities ‘ ‘ which may be affected by thruway construction * * * shall be borne by the authority.” Taking cognizance of the fact that the State had been proceeding with construction of portions of the Thruway, it was provided that at any future time the Authority might adopt a resolution assuming jurisdiction of any or all of the Thruway sections and connections; and that, pending such resolution, the Superintendent of Public Works was to have all the powers conferred upon the Authority and, at its request, perform such work as its agent.
The section here involved was, as described in the contract, a portion of the Thruway. It was expressly included and *769 described in section 356 of the Public Authorities Law, as the “ Southern Westchester Connection.” It appears that, through some inadvertence, it had been omitted from the description of the Thruway connections set forth in section 349-a of the Highway Law; in 1961, however, it was added to that section to conform, as stated by the Authority, “ such description to the correct description thereof contained in section 356 of the Public Authorities Law.” Jurisdiction of this connection was assumed by resolution of the Authority in 1957.
Counsel have engaged in a highly technical debate as to whether this construction and the obligations arising therefrom are governed by the provisions of the Highway Law or the Public Authorities Law. Since there is no material difference in these statutory provisions applicable to the construction of a portion of the Thruway, their controversy is really concerned with the fact that this trench for the installation of two sewers by plaintiffs was in that portion of Central Park Avenue which was not in the Thruway cut proper. However, the two new sewers were required to be installed by the State to replace the two existing sewers eliminated by the construction. Thus, there can be no doubt as to defendant’s two duct lines being “ affected by thruway construction,” even though not in the direct path of the Thruway.
These statutes, providing that when relocation of utility facilities is ordered in the discretion of the Superintendent or Authority, the expense shall be borne by the State or Authority, constitute a modification to that extent of the common-law rule (cf. New Rochelle Water Co. v. State of New York, 10 N Y 2d 287).
However, these duct lines were not ordered to be relocated. Accordingly, defendant could have been charged by the State with the obligation and expense of protecting them. The real issue in this case is whether the State, in effect, assumed this responsibility in the contract made with plaintiffs and agreed to include in the contract amount payment for the element of protection to defendant’s ducts embraced in the limitation of plaintiffs’ blasting at this trench. The precise issue is whether such limitation in blasting was within the purview of the contract as a requirement of the specifications to be performed by plaintiffs, or, simply stated, whether the limitation ordered by the engineer was covered in the contract. Obviously, plaintiffs cannot recover from defendant, regardless of any benefit accruing to it, if they did no more than what they were obligated to do under their contract specifications and were paid therefor by the State.
*770 The contract is a voluminous document. There are numerous provisions for the relocation and installation of gas mains, underground tanks, conduits and electric distribution lines, to be paid for as contract items. There also are some provisions requiring the contractor to protect certain utility facilities; such as one requiring them to take special precautions to protect existing electric conduits during the excavation and construction of drainage facilities at three stated locations (but not referring at this point to this location) with payment therefor to be included in the price paid for other contract items.
Under the general heading of “ Utilities ” there is the standard clause as to notice to the companies owning structures located in the area about to be disturbed to take measures to protect their facilities. It then states: ‘1 However, should any Company or Public Service Corporation within five days after receipt of said notice, fail to remove or otherwise protect its Said surface or subsurface structures, the Contractor may with the approval and direction of the Engineer, remove or protect same; it being expressly understood that the cost thereof shall not be a charge against the State, and that the liability, if any, is a matter for adjustment between the Contractor and the Company or Public Service Corporation concerned.” It is this clause which constitutes the main prop of plaintiffs’ claim against Consolidated.
This clause was construed in Necaro Co. v. Eighth Ave. R. R. Co. (220 App. Div. 144) as imposing liability for the reasonable value of the work done by a contractor, constructing a sewer for the City of New York, in shoring up and supporting the railroad’s tracks and facilities upon its failure after due notice to protect such facilities.
In this case plaintiffs did not shore up or physically support defendant’s ducts. Defendant argues that the words, “ remove or protect same,” refer solely to specific physical acts directed to the removal or protection of its ducts; that limitation in blasting, even if due to the proximity of utility facilities, does not fall within the meaning of the standard clause as an act by the contractor to “ protect same.” Counsel have not referred the court to any reported case, nor has research revealed any case, dealing with protection of facilities in any form other than a direct physical act. But the word, ‘ ‘ protect, ” is a broad term and must be deemed to include any act of the contractor, direct or indirect, which is necessitated by the proximity of a utility facility and is performed to ‘ ‘ protect same. ’ ’ The court accordingly holds that liinitation in blasting, if required solely by *771 reason of the proximity of utility facilities, is an act to “ protect same ’ ’ within the meaning of the standard clause.
However, under this contract, since there are various provisions therein for relocating and protecting utility facilities to be paid for by the State, the standard clause can be given effect only with respect to such items of work by the contractor relating to utility facilities as are not encompassed in the contract specifications. Since this forms the basis upon which plaintiffs submitted their bid and were paid by the State, any act provided therein to be done by plaintiffs is not within the scope and meaning of the standard clause in this contract.
We turn then to the contract specifications concerning blasting. There is a general provision permitting ‘ ‘ normal blasting practice ” except in close proximity to utility facilities, aqueducts, tunnels, etc. At such locations, when ordered by the engineer, the contractor “ shall use close drilling and light charges; ” and “ blasting charges shall be limited to a maximum of 10 pounds of dynamite per hole with a maximum of 8 holes, using one delay for each hole ” (emphasis added). The contractor was directed to include all cost of the above requirements in the unit prices bid for excavation work.
The blasting charges at this trench were severely restricted, being limited to less than 10% of the above-stated maximum for blasting in the vicinity of the described facilities. Plaintiffs read this provision as a permissible maximum in the vicinity of any of the described facilities and thus make claim for the difference in the cost of the limited blasting at this trench. Their interpretation ignores the word “maximum.” They would be correct if the provision read that charges “ shall be limited to 10 pounds ”, in which event their bid and the contract payment would be based on such assumption and any additional limitation would then be chargeable to and payable by the utility protected.
However, while the meaning of this provision is that, when ordered by the engineer to limit blasting, without further particularization, the contractor could blast the stated maximum amount, it must also mean that the engineer could require charges of any specified amount up to the stated maximum when deemed to be necessary to protect a particular facility. If this be so, as seems clear, then on what basis could plaintiffs’ “ extra ” cost for limitation in blasting be computed?
Bidders were required to inform themselves of all relevant conditions and submit their bids for excavation work in the light of this and other provisions dealing with restrictions upon blast *772 ing. They were given to understand that all limitations in blasting, when ordered by the engineer, would be at their expense, so that their bids for excavation work were to make due allowance therefor.
In the specifications dealing with the installation of certain gas mains and electric distribution lines, bidders were advised under “ Methods of Construction ” that blasting charges shall be limited so as to prevent damage to adjacent structures and that “ such limitation shall be at the expense of the contractor.” In the “ Special Notes ” attention was directed to the borings, made for this project at locations indicated on the plans, being available for inspection by bidders; that the site of the work should be carefully examined; and that special inquiry should be made at utility company offices and by means of the public records concerning the existence of utility structures. Scale drawings for each location were available; for example, sheet No. 213 of the drainage and utility plan clearly showed this area, the two existing sewers, defendant’s two duct lines and the projected line of the two new sewers to be constructed.
There is a specific reference in the contract under “ Unclassified Excavation ” to the necessity for line drilling in the excavation of rock in this particular area on the west side of the Thruway, and also that: “ Extra precautions shall be taken in this area in the number and length, placing and direction of holes and with such loadings of holes and with such explosives and of such power as will not make the excavation unduly irregular or unsafe or unduly shake up the ground and make it unstable.” Plaintiffs argue that the “ west side of the Thruway ’ ’ refers to the westerly portion at this point of the Thruway cut and not the westerly portion of the street near the curb, where this excavation took place. But it is clear from plaintiffs ’ own evidence that no precautions whatever were taken in excavating at the cut itself, the testimony being that as much as 1,000-pound shots were used there, while 1-pound shots had to be used at the trench.
It must therefore be concluded that plaintiffs’ bid for excavation work contemplated and included the expense of limitation of blasting to protect utility facilities, when ordered by the engineer, and, in particular, anticipated special limitation in this area. Plaintiffs merely performed the work that was required by their contract with the State and were paid by the State. They have no claim against defendant.
The Clerk is accordingly directed to enter judgment in favor of defendant dismissing the complaint on the merits.